745 So.2d 208 (1999)
STATE of Louisiana
v.
Charles James MITCHELL, III.
No. 99 KA 0283.
Court of Appeal of Louisiana, First Circuit.
November 5, 1999.
*209 James R. McClelland, Assistant District Attorney, Franklin, for Appellee, State of Louisiana.
Dmitrc I. Burnes, Alexandria, for Defendant/Appellant, Charles James Mitchell, III.
Before: CARTER, C.J., LeBLANC, and PETTIGREW, JJ.
CARTER, C.J.
Defendant, Charles James Mitchell, III, was charged by bill of information with two counts of attempted first degree murder, violations of LSA-R.S. 14:27 and 14:30. Following a jury trial, he was found guilty of one count of attempted first degree murder,[1] and sentenced to twenty years at hard labor, without benefit of probation, parole, or suspension of sentence. LSA-R.S. 14:27 D(1) and 14:30 C. *210 Defendant has now appealed, raising eleven assignments of error.

FACTS
Shortly before midnight on January 17, 1998, defendant and several companions, James Waxter, III, Evans Gibson, and Frederick Barrow, were riding around Morgan City, Louisiana, in a white Lincoln driven by Waxter. Waxter had picked up Barrow and Gibson earlier that evening in Verdunville, Louisiana. Defendant subsequently joined the group when the others encountered him walking along a road. The group drove around Verdunville for awhile, drinking alcohol and smoking marijuana, before deciding to drive to Morgan City. Barrow was seated in the front passenger seat, with Gibson and defendant in the back seat.
In Morgan City, the group looked for a party they heard was being held that evening. While looking for the party, the group encountered a large crowd of young men milling about. A cousin of Gibson approached the Lincoln and said there was going to be a fight between rival gangs from the towns of Patterson and Morgan City, which apparently stemmed from an earlier argument at a party.[2]
When a large number of the young men jumped into a blue pick-up truck and drove off, Waxter decided to follow them in order to "see what was going on." Waxter followed the blue truck to the parking lot of a Church's Fried Chicken restaurant, then parked to await the anticipated fight. When the fight started between the occupants of the blue truck and other individuals in the parking lot, defendant and his companions stayed in the car and watched. Although several of Gibson's cousins were involved in the fight, none of the members of defendant's group got out of the white Lincoln.
The evidence indicates that at some point Barrow had asked defendant for a gun which defendant had in his possession that evening. Defendant handed the revolver to Barrow. There is conflicting testimony as to whether this exchange occurred when defendant's group first encountered the crowd of young men or while the group was in the parking lot at Church's.
In any event, after the fight broke up, a number of the young men jumped back into the blue truck, which left the parking lot with Waxter following closely behind. At this point, using the gun he had obtained from defendant, Barrow fired five shots out of the car's window.
Two people in the parking lot were stuck by bullets and sustained serious injuries requiring multiple surgeries. Candace Henry was shot in the arm as she walked through the parking lot toward Church's entrance. Nathan Williams, Jr. was shot in his left foot. Both victims had attended the party where the earlier trouble had occurred. Neither victim was involved in the parking lot fight.
At trial, Barrow testified that he asked defendant for the gun because defendant was "loaded" and had taken the gun out of his jacket. Barrow indicated he was concerned that defendant might start playing with the gun and shoot it. He said he fired the gun so that it would be empty when he returned it to defendant.
When Waxter heard the gunshots, he quickly exited the parking lot and took off. He claimed he did not realize Barrow had fired the shots until they were on their way home. According to Waxter, they did not report the shooting because they did not think anyone was injured. During the ride home, defendant asked Barrow to return his gun. The police never recovered the gun.
Defendant did not testify at trial; however, he gave a videotaped statement, which was introduced into evidence. Defendant admitted he was with Barrow, Gibson, *211 and another male (whose name he did not know) in a white vehicle in Morgan City. However, he denied any knowledge of a gun, a fight, or a shooting.
As a result of this incident, defendant and Barrow were each charged, in separate proceedings, with two counts of attempted first degree murder. Barrow pled guilty as charged to both counts. Defendant was found guilty in the present proceeding of one count of attempted first degree murder.

SUFFICIENCY OF THE EVIDENCE
In assignment of error number 6, defendant argues the state's evidence was insufficient to support his conviction for attempted first degree murder because it failed to establish that he possessed specific intent to kill. In assignment of error number 7, he complains of the denial of his motion for post-verdict judgment of acquittal, which was based on insufficiency of the evidence. In cases such as the present one where the defendant raises issues on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for determining the sufficiency of the evidence first is that insufficient evidence to support the guilty verdict bars the retrial of a defendant because of the constitutional protection against double jeopardy, thereby rendering all of the other issues moot. See Hudson v. Louisiana, 450 U.S. 40, 43-45, 101 S.Ct. 970, 972-73, 67 L.Ed.2d 30 (1981); State v. George, 95-0110, p. 6 (La.10/16/95), 661 So.2d 975, 978. Accordingly, we will proceed first to determine whether the evidence was sufficient to support defendant's conviction for attempted first degree murder.
The state's theory in this case is that, although Frederick Barrow actually fired the gunshots that injured the victims, defendant was also guilty as a principal since he provided Barrow with the gun used in the shooting. The state asserts it established the essential elements of attempted first degree under two separate subsections of LSA-R.S. 14:30 A. The state first argues that defendant is guilty under LSA-R.S. 14:30 A(1) because the attempted murder occurred during the commission of a drive-by shooting. Second, it asserts defendant is also guilty under LSA-R.S. 14:30 A(3) since he possessed specific intent to kill more than one person.
In opposition, defendant argues the state's evidence failed to establish that he had specific intent to kill, an essential element of the crime of attempted murder under both of the designated subsections of LSA-R.S. 14:30 A. Additionally, with respect to the state's position that the victims were shot during the commission of a drive-by shooting, defendant argues the state failed to establish the shooting occurred on a public highway or street, which is an essential element of the crime of drive-by shooting.
The standard of review for the sufficiency of evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. See LSA-C.Cr.P. art. 821; State v. Pizzalato, 93-1415, p. 17 (La.App. 1st Cir.10/7/94), 644 So.2d 712, 721, writ denied, 94-2755 (La.3/10/95), 650 So.2d 1174. The Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, LSA-R.S. 15:438 provides the fact finder must be satisfied that the overall evidence excludes every reasonable hypothesis of innocence. State v. Hendon, 94-0516, p. 4 (La.App. 1st Cir.4/7/95), 654 So.2d 447, 449.
Louisiana Revised Statute 14:30 A, sections (1) and (3) provide as follows:
A. First degree murder is the killing of a human being:

*212 (1) When the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of aggravated kidnapping, second degree kidnapping, aggravated escape, aggravated arson, aggravated rape, forcible rape, aggravated burglary, armed robbery, drive-by shooting, first degree robbery, or simple robbery. [emphasis added].
* * * * * *
(3) When the offender has a specific intent to kill or to inflict great bodily harm upon more than one person ....
Under LSA-R.S. 14:27 A, a person is guilty of an attempt to commit an offense when he has a specific intent to commit a crime and "does or omits an act for the purpose of and tending directly toward the accomplishing of his object." Moreover, LSA-R.S. 14:24 defines principals as follows:
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
The gravamen of the crime of attempted murder, whether first or second degree, is the specific intent to kill and the commission of an overt act tending toward the accomplishment of that goal. State v. Huizar, 414 So.2d 741, 746 (La. 1982) (emphasis added). Although specific intent to inflict great bodily harm may support a conviction for murder, such intent is insufficient to support a conviction for attempted murder. See State v. Hongo, 96-2060, p. 2 (La.12/2/97), 706 So.2d 419, 420; State v. Brunet, 95-0340, pp. 4-5 (La.App. 1st Cir.4/30/96), 674 So.2d 344, 346-47, writ denied, 96-1406 (La.11/1/96), 681 So.2d 1258.
Specific criminal intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." LSA-R.S. 14:10(1). Since specific intent is a state of mind, it need not be proven as a fact, but may be inferred from the circumstances present and the actions of the defendant. State v. Allen, 94-1941, p. 9 (La.App. 1st Cir.11/9/95), 664 So.2d 1264, 1272, writ denied, 95-2946 (La.3/15/96), 669 So.2d 433.
The evidence in this case clearly establishes that defendant gave Barrow the gun used in the shooting. However, in order for defendant to be guilty as a principal to attempted first degree murder under either LSA-R.S. 14:30 A(1) or (3), he must also have possessed specific intent to kill. While all persons "concerned in the commission of a crime" are principals under LSA-R.S. 14:24, this rule has important qualifications. "[A]n individual may only be convicted as a principal for those crimes for which he personally has the requisite mental state." State v. Pierre, 93-0893, p. 4 (La.2/3/94), 631 So.2d 427, 428; State v. Holmes, 388 So.2d 722, 726 (La.1980). It is not enough to find merely that his coconspirator or accomplice had the necessary mental state, since this intent cannot be inferred to the accused. Holmes, 388 So.2d at 726.
At trial, defendant did not testify, and no direct evidence was presented to establish his intent. The state relied upon the testimony of the other occupants of the white car to establish this element of the offense. However, our review of this testimony indicates it was insufficient to establish that defendant possessed specific intent to kill.
The record contains scant evidence that defendant knew Barrow was going to shoot the gun into the crowd standing outside of Church's. The testimony of Waxter and Gibson was in accord on several crucial points. They each indicated that no one in the car knew Barrow was going to shoot the gun, and that no one, including defendant, discussed shooting anyone with Barrow. Waxter further testified *213 that Barrow acted spontaneously and entirely on his own. Both Waxter and Gibson indicated that, immediately before the shooting, Barrow made a statement to the effect that he wanted "to shoot," and that Gibson told him not to do it.
Moreover, no witness testified that anyone from the white car was involved in the fight which took place at Church's nor that any threats were made by any individual in that vehicle. In fact, Gibson testified that when Waxter indicated he wanted to get out of the car and join the fight at Church's, defendant stopped him, stating, "We had nothing to do with it."
Waxter and Gibson each testified that no one said anything immediately after the shooting, but that later, on the way home, Barrow said something to the effect that "[t]hey thought they were bold." According to Waxter, Barrow asserted that he fired the first shot as a warning shot.
Barrow also testified at trial. According to his testimony, defendant removed the gun from his jacket when they first encountered the crowd in the street. He testified he was concerned about defendant having a loaded gun when he was not sober. According to Barrow, whenever defendant "get[s] loaded, he start playing with that gun he's going to shoot it and all, shoot in the air, or he might point it at you or something like that he go to playing with it." In order to get the gun, Barrow said he told defendant he was going to shoot it when they started fighting. However, he stated that he never intended to shoot or kill anyone, and was not aiming for the crowd. He explained that he fired the gun in order to empty it out before giving it back to defendant, because he was the only sober one in the car. After firing the shots, he gave the gun back to defendant, and never saw it again.
Barrow testified he did not recall making the statement in the car that he wanted to shoot. However, he admitted he might have done so since he could not remember all that was said. Barrow further testified that defendant "implied that if I wasn't going to shoot the gun, I should give it back to him." However, he did not specify what defendant said or did to cause him to draw this inference. Moreover, neither Waxter nor Gibson indicated that defendant made any such statements. To the contrary, their testimony was to the effect that there was no discussion about shooting the gun, and that no one anticipated what Barrow was going to do.
Viewing all of the evidence in a light most favorable to the state, we find that, although the evidence established defendant provided Barrow with the gun used in the shooting, it does not establish beyond a reasonable doubt that defendant intended that Barrow use the gun to kill someone. Barrow himself testified that he did not intend to shoot or to kill anyone. Furthermore, although Barrow testified he told defendant he was going to shoot the gun, there was absolutely no evidence that he ever told defendant he was going to shoot anyone. Even accepting for the sake of argument Barrow's inference that defendant wanted the gun back if Barrow did not shoot it, this circumstantial evidence tends only to establish that defendant may have wanted Barrow to shoot the gun, but not that defendant wanted Barrow to kill anyone. This evidence does not exclude the reasonable hypothesis of innocence that defendant gave the gun to Barrow with the intent that Barrow would fire the gun into the air. It is significant in this respect that there is no indication in the record that defendant was involved in the fight between the rival groups at Church's, had made any threats toward them, or had any other reason for wanting to shoot into the crowd.
We note that in State v. Butler, 618 So.2d 572, 573 (La.App. 2nd Cir.), writ denied, 624 So.2d 1226 (La.1993), the court found sufficient evidence of specific intent to kill more than one person to convict defendant of attempted first degree murder when the defendant yelled gang slogans and fired five to eight shots at a *214 crowd. However, in the present case the record is devoid of any threats made to anyone by either defendant or his companions.
Accordingly, we find that any rational trier of fact, after viewing all of the evidence in a light most favorable to the prosecution, necessarily must have a reasonable doubt as to the sufficiency of the evidence regarding whether defendant possessed specific intent to kill, and, therefore, necessarily must conclude the state failed to prove this essential element of attempted first degree murder beyond a reasonable doubt. Therefore, the evidence is insufficient to support defendant's conviction for attempted first degree murder under either LSA-R.S. 14:30 A(1) or (3).
Finally, in assignment of error number 8, defendant also argues the state's evidence was insufficient to establish a second essential element of the theory that he was guilty of attempted first degree murder under LSA-R.S. 14:30 A(1) because the evidence failed to establish that the shooting occurred on a public highway or street as is required for the commission of a drive-by shooting under LSA-R.S. 14:37.1 C. However, in light of the fact that we have already concluded the state's evidence was insufficient to establish specific intent to kill, we pretermit consideration of this argument.
Accordingly, because the evidence is constitutionally insufficient to support defendant's conviction for attempted first degree murder, we reverse his conviction, vacate his sentence, and enter an order of acquittal.[3] In view of this conclusion, defendant's remaining assignments of error are pretermitted as moot.[4]
CONVICTION REVERSED; SENTENCE VACATED; ORDER OF ACQUITTAL ENTERED.
NOTES
[1] Through an oversight, the jury was presented with a verdict form as to only one count of attempted first degree murder. The prosecutor specifically waived the second count of attempted first degree murder.
[2] The record does not indicate whether the party where the earlier argument occurred was the same party that defendant and his companions were attempting to find.
[3] Louisiana Code of Criminal Procedure article 821 E provides that an appellate court, in lieu of granting a post verdict judgment of acquittal, may modify the verdict and render a judgment of conviction on the lesser included responsive offense, if the evidence supports only a conviction for a lesser included responsive offense. The responsive guilty verdicts to a charge of attempted first degree murder are attempted second degree murder, attempted manslaughter, and aggravated battery. See LSA-C.Cr.P. art. 814A(2). However, in this case, we conclude the state's evidence likewise is insufficient to support a conviction for any of the lesser included offenses. As with attempted first degree murder, specific intent to kill is an essential element of both attempted second degree murder and attempted manslaughter. See Brunet, 674 So.2d at 347. We have already concluded there is insufficient evidence to establish defendant possessed specific intent to kill. With regard to aggravated battery, we also conclude there is insufficient evidence to show defendant had general intent to commit a battery on a person. The circumstantial evidence presented by the state on the issue of defendant's intent does not exclude the reasonable hypothesis that defendant gave the gun to Barrow with the intent that Barrow fire the gun into the air. In particular, we note there is no evidence that anyone in the vehicle knew Barrow's intent of firing the gun into the crowd.
[4] The pretermitted assignments of error were: (1) failure to allot this case to another division, or alternatively to randomly allot the case; (2) denial of a motion to recuse the trial judge; (3) impermissible references by the prosecutor to defendant's silence; (4) denial of Batson challenges; (5) denial of a motion for mistrial; (9) denial of requested jury charge regarding the mandatory minimum sentence for the charged offense; (10) refusal to allow argument as to the mandatory minimum sentence; and (11) excessive sentence.