772 So.2d 78 (2000)
STATE of Louisiana
v.
Charles James MITCHELL, III.
No. 99-K-3342.
Supreme Court of Louisiana.
October 17, 2000.
*80 Richard P. Ieyoub, Attorney General, John Philip Haney, District Attorney, James Ray McClelland, Thomas C. Senette, Franklin, Counsel for Applicant.
Dmitre Ian Burnes, Alexandria, Counsel for Respondent.
KNOLL, Justice.
This case involves a shooting which occurred in Morgan City, Louisiana. After a fight between rival groups from Patterson and Morgan City, a number of gun shots were fired from a vehicle fleeing the scene and two bystanders were injured. The jury, after a ten to two vote,[1] found defendant guilty as charged of one count of attempted first-degree murder under LA. REV.STAT. §§ 14:27 and 14:30. He was sentenced to twenty years at hard labor, without benefit of parol, probation, or suspension of sentence.[2] The First Circuit Court of Appeal reversed the conviction, concluding that the evidence was insufficient to support the defendant's conviction because no rational trier of fact could have excluded every reasonable alternative hypothesis of innocence. Finding that the court of appeal acted as a "thirteenth juror" in undermining the decision of the jury, we reverse and reinstate the defendant's conviction.

FACTS
On the evening of January 17, 1998, James Waxter, III ("Waxter") and his father-in-law left their residence in the Franklin area in a white 1980 Lincoln Continental. Waxter dropped his father-in-law off at a bar in Verdunville, Louisiana and proceeded to the house of his friend, Fred Barrow ("Barrow"). Barrow joined Waxter in the car and the two traveled to the house of Evans Gibson ("Gibson"). Upon locating Gibson, the three began driving around Verdunville at which time they spotted the defendant, Charles James Mitchell, III ("Mitchell") walking down a street in the town. Defendant joined them in the car. Mitchell was seated directly behind Waxter, who was driving. Gibson was also in the back of the car on the passenger side seated directly behind Barrow.
After some time, the four decided to go to Morgan City for the evening. While en route, they stopped at Cracker Barrel on the highway in Patterson, purchased some liquor, and then resumed their trip. The four journeyed through Berwick and on to Morgan City; throughout the trip, all four of the occupants smoked marijuana and drank alcohol.
*81 Upon their arrival in Morgan City, the group learned about a party being held that evening. They were informed that an altercation between rival groups from Patterson and Morgan City had started at the party and that there was going to be a fight. The group then witnessed a large group of young men jump into the back of a blue pick-up truck. Waxter followed the truck to the Church's Fried Chicken parking lot with the intention of seeing "what was going on." Soon after entering the parking lot, Waxter parked and, along with the other occupants of the car, watched the fight between a group in the blue truck and a group that had already left the party and arrived at the parking lot.
The record evidence indicates that at some point, either before arriving in the parking lot or some time after, Barrow asked defendant if he could have the gun that Mitchell was carrying. Defendant handed the gun to Barrow. Barrow's testimony indicated that he wanted to take the gun from defendant because he felt that due to defendant's degree of intoxication, it would be wise to take the gun from him as defendant had been known to wave and point the gun when he was under the influence of drugs and alcohol. To get the gun from defendant, Barrow told defendant that he "was going to shoot it when they started fighting." Defendant gave Barrow his gun and at some point before the shooting occurred, defendant told Barrow that if he was not going to use the gun, he should return the gun to defendant.[3]
After the fight ended, the blue truck exited the parking lot and Waxter followed. As Waxter was exiting the parking lot, Barrow fired approximately five shots from the Lincoln into the crowd hitting two bystanders. C.H. was hit in the arm as she walked through the lot and N.W. was hit in the foot.[4] Both of the victims had been at the party where the initial altercation began. Upon hearing the shots, Waxter immediately fled the scene. Waxter testified that he fled the scene because he was unaware that the shots had come from his car until they were on their way home. During the ride home, Barrow returned defendant's gun to defendant after defendant requested the gun from Barrow. The gun was never recovered by the police.
While the defendant did not testify at trial, he did voluntarily give a videotaped statement to the police. Contrary to Barrow's testimony at trial, the defendant claimed that although he was in the car on the night of the shooting, he was unaware that any gun was present, that any fight had occurred, or that any shots were fired.[5]

PROCEDURAL HISTORY
On appeal, the defendant raised eleven assignments of error. The First Circuit examined assignment of error number six, relative to insufficiency of evidence, and reversed the decision of the jury, finding that the evidence, viewed in a light most favorable to the State, did "not establish *82 beyond a reasonable doubt that defendant intended that Barrow use the gun to kill someone." State v. Mitchell, 99-0283 (La. App. 1 Cir. 11/5/99), 745 So.2d 208, 213. The court of appeal reasoned that because the evidence was entirely circumstantial, the State was required to negate every reasonable hypothesis of innocence according to LA.REV.STAT. § 15:438. The court of appeal concluded that the evidence did not exclude "the reasonable hypothesis of innocence that defendant gave the gun to Barrow with the intent that Barrow would fire the gun into the air." Id. The court of appeal also noted that it was significant that the defendant was not involved in the fight in the parking lot, had made no threats toward any of the people involved in the fight, and had no reason for wanting to shoot into the crowd. Id. Thus, the court of appeal reversed the decision of the jury and over-turned the conviction and sentence. We granted the State's writ application to review the correctness of the appellate court's decision. State v. Mitchell, 99-3342 (La.5/26/00), 762 So.2d 625.

ANALYSIS
In order to convict an individual of first-degree murder, LA.REV.STAT. § 14:30 provides that the offender must have specific intent to kill or inflict great bodily harm and be engaged in one of the enumerated felonies, including a drive-by shooting, or have the specific intent to kill or inflict great bodily harm upon more than one person. LA.REV.STAT. § 14:30(A)(3). An attempted first-degree murder requires that the offender do or omit to do an act for the purpose of and tending directly toward the accomplishing of his object and have the specific intent to kill. LA.REV.STAT. § 14:27(A). It is important to note that specific intent to inflict great bodily harm may support a conviction for murder, but in order to support a conviction for attempted murder, only specific intent to kill is sufficient. State v. Hongo, 96-2060, p. 2 (La.12/2/97), 706 So.2d 419, 420.
All persons can be convicted as a principal to a crime if he is "concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime." LA.REV.STAT. § 14:24. Not all principals are automatically guilty of the same grade of offense as the main offender because the mental state of the offenders may be different. State v. Brooks, 505 So.2d 714(La.), cert. denied, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987). Thus, "an individual may only be convicted as a principal for those crimes which he personally has the requisite mental state." Id. The intent of the accomplice cannot be inferred to the accused. State v. Holmes, 388 So.2d 722 (La.1980).
Specific intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." LA.REV. STAT. § 14:10(1). Because specific intent is a state of mind, it need not be proven as a fact but may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Graham, 420 So.2d 1126 (La.1982).
When reviewing the sufficiency of the evidence to support a conviction, Louisiana appellate courts are controlled by the standard enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). State v. Captville, 448 So.2d 676, 678 (La.1984). That standard is that "the appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt." Id. The Louisiana legislature codified this standard in LA.CODE CRIM. PROC. art. 821 which applies to all post-verdict motions for acquittal *83 based on insufficiency of the evidence. Article 821 reads in pertinent part:
A. The defendant may move for a post verdict judgment of acquittal following the verdict ...
B. A post verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty.
Under LA.CODE CRIM. PROC. art. 804(A), a trial judge is required to instruct the jury that each element of the crime necessary to constitute guilt, must be proven beyond a reasonable doubt. In cases involving circumstantial evidence, the trial judge must instruct the jurors that the evidence must exclude every reasonable hypothesis of innocence. LA.REV.STAT. § 15:438. On appeal, the reviewing court "does not determine whether another possible hypothesis suggested by a defendant could afford an exculpatory explanation of the events." State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012, 1020. Rather, the court must evaluate the evidence in a light most favorable to the state and determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. Id.
The jury is the ultimate factfinder of "whether a defendant proved his condition and whether the state negated that defense." Id. The reviewing court "must not impinge on the jury's factfinding prerogative in a criminal case except to the extent necessary to guarantee constitutional due process." Id. (citing State v. McKeever, 407 So.2d 662, 665 (La.1981)). Therefore, in order for a reviewing court to reverse a conviction based on an alternative hypothesis of innocence, the court must find that the jury could not have negated a potential alternative hypothesis for the defendant's action because specific intent to kill was not proven. The crux of the State's case is proving defendant's specific intent to kill. This evidence, in and of itself, negates every reasonable hypothesis of innocence. For example, in this case, if the State had failed to put on evidence of defendant's specific intent to kill to negate the hypothesis that defendant wanted Barrow to fire the gun into the air, then the reviewing court would properly have determined that the jury erred in finding that defendant did not want the gun fired into the air in order to unload it. Here, the State presented evidence of the defendant's specific intent to kill which the jury accepted. The reviewing court cannot assume a reasonable alternative hypothesis exists where the jury has heard evidence of specific intent to kill to negate the hypothesis.
"The actual trier of fact's rational credibility calls, evidence weighing, and inference drawing are preserved ... by the admonition that the sufficiency inquiry does not require a court to ask itself whether it believes that the evidence at trial established guilt beyond a reasonable doubt." State v. Mussall, 523 So.2d 1305, 1311 (La.1988). The reviewing court is not called upon to determine whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. Id. Rather, the court must assure that the jurors did not speculate where the evidence is such that reasonable jurors must have a reasonable doubt. Id. (citing 2 C. Wright, Federal Practice and Procedure, Criminal 2d, § 467, at 465-466 (1982)). The reviewing court cannot substitute its idea of what the verdict should be for that of the jury. Id. Finally, the "appellate court is constitutionally precluded from acting as a `thirteenth juror' in assessing what weight to give evidence in criminal cases; that determination rests solely on the sound discretion of the trier of fact." State v. Azema, 633 So.2d 723, 727 (La.App. 1 Cir.1993).
The defendant argues that he lacked the requisite specific intent to kill because it is a reasonable hypothesis that he handed the gun to Barrow in order for Barrow to fire a warning shot or to use the gun in *84 self-defense if necessary. The court of appeal agreed with this contention and, applying the Captville test, determined that the jury failed to exclude every reasonable hypothesis of innocence. More particularly, the court of appeal concluded that it was a reasonable hypothesis that the defendant gave the gun to Barrow with the intent that Barrow fire the gun into the air. The court reasoned that even though the defendant requested the return of the gun if Barrow would not shoot it, this circumstantial evidence was only enough to prove that the defendant may have wanted Barrow to shoot the gun, not to kill someone.
In reaching the conclusion that the jury should have had a reasonable doubt concerning the defendant's specific intent to kill, we find that the court of appeal impermissibly substituted its judgment for that of the jury. The determination of whether the requisite intent is present in a criminal case is for the trier of fact. On review, the evidence presented at trial must be examined in a light most favorable to the state and it will only be declared insufficient if no rational trier of fact could have found the defendant guilty of every element of the crime charged. Jackson, 443 U.S. at 319, 99 S.Ct. 2781.
In a similar case, State v. Smith, 26,661 (La.App. 2 Cir.), 651 So.2d 890, writ denied, 95-0918 (La.9/15/95), 660 So.2d 458, defendant was charged with, among other things, attempted second-degree murder resulting from a drive-by shooting. A codefendant, who was driving the car, was also charged even though he had not fired the gun. The co-defendant, like Mitchell, argued that he lacked the specific intent to kill as required by the statute.[6] Prior to the shooting, defendant was present at a party where a drive-by shooting was discussed. A large group of cars then left the party and drove down the street where the shooting occurred. Later, the cars drove back down the street with defendant driving and his co-defendants riding with him. He turned off his lights and drove slowly down the street. The two passengers in the back of the car noticed that the passenger in the front had a gun in his hand. After the shooting, defendant drove off very rapidly.
The jury convicted the driver of the car and the court of appeal affirmed. The defendant argued that the evidence was insufficient to support a verdict of attempted second-degree murder. Evidence that defendant was at the party where the conspiracy of a drive-by shooting was first discussed and that defendant drove down the street of the shooting, assumed the role of lead vehicle in the convoy, and turned off his headlights, could have led a reasonable jury to conclude that the defendant aided and abetted in the commission of the crime. Smith, 651 So.2d at 900. Even though the driver said nothing about actually killing anyone, the appellate court determined that the circumstantial evidence, when viewed in a light most favorable to the state, was sufficient to negate any reasonable hypothesis of innocence.
Like the defendant in Smith, defendant did not fire the gun that injured the victims. However, he did provide Barrow with the gun after Barrow told defendant that he (Barrow) would shoot when the fight started and defendant later told Barrow that if he was not going to use it then he should return the gun to him. It was after this statement by defendant that Barrow fired five shots into the crowd hitting two bystanders. Defendant maintains, and the court of appeal agreed, that under these circumstances the jury could not have reasonably negated the hypothesis that the defendant only wanted Barrow *85 to fire the gun into the air. The jury did not believe that this was a reasonable hypothesis as evidenced by their determination that defendant could only have wanted the gun fired into the group because of his statement that if Barrow would not shoot, then he should give the gun back to defendant.
Moreover, from the voluntary statement defendant gave to the police, an inference of a "guilty mind" can be drawn from the defendant's dishonesty when he claimed that he was unaware that a gun was present, that any fight had occurred, or that any shots had been fired. In Captville, 448 So.2d at 680, n. 4, this Court noted that:
Such a finding of purposeful misrepresentation reasonably raises the inference of a "guilty mind", just as in the case of "flight" following an offense or the case of a material misrepresentation of facts by a defendant following an offense. See State v. Davenport, 445 So.2d 1190 (La.1984). "Lying" has been recognized as indicative of an awareness of wrongdoing. See State v. Rault, 445 So.2d 1203 (La.1984).
Because of the defendant's untruthful statement concerning the shooting, it would not have been unreasonable for the jury to infer that the defendant was guilty of the crime charged. In Rault, the defendant gave a statement at the crime scene describing the rape of the victim by two other assailants. Rault, 445 So.2d at 1213. On review of the conviction, this Court determined that the jury could have reasonably concluded that the hypothesis of innocence was concocted by the accused to hide his own guilt. Id.
Like the jury in Rault, the jurors in this case could have determined that from the story the defendant told police, the hypothesis that he wanted the gun fired into the air was unreasonable. If the defendant's true intent was only for the gun to be fired into the air then he could have relayed that to the police when questioned. Under the present set of facts, the defendant's untruthfulness does support a "guilty mind" and although this is not enough in and of itself to convict defendant, his dishonesty is admissible to show his intent.
Based upon the record evidence, we find it is reasonable for one to determine that the defendant wanted Barrow to shoot the gun into the crowd. Barrow told defendant that he was going to shoot when the fight started. Also, Barrow testified that the defendant said that if he was not going to shoot the gun then he should give the gun back to him. The reasonable person's understanding of defendant's statement, "shoot the gun," would seemingly not be that an individual means to fire the gun in the air to unload it. The use of a handgun in a car where there is no self-defense scenario is clearly limited. No reasonable person would think that someone who is instructing a person to shoot a gun while in a parking lot after witnessing a fight would mean that they want the person to fire the gun into the air. Ultimately, Barrow shot the gun five times after defendant told Barrow to use the gun or give it back to defendant. Defendant's statement was the impetus Barrow needed to shoot the gun five times into the crowd. After a review of the evidence presented at the trial viewed in a light most favorable to the State, we conclude that a reasonable jury could have excluded the hypothesis that the defendant only wanted the gun fired into the air. We find that the court of appeal erred in substituting their opinion for the opinion of the jury and we reverse.

DECREE
The evidence of the events and the statements of the parties at trial were legally sufficient to convict defendant of the crime charged because the State did provide the jury with sufficient evidence of defendant's specific intent to kill that negated every possible hypothesis of innocence of the defendant. Therefore, for the foregoing reasons, the judgment of the court of appeal is reversed and the conviction *86 and sentence of the defendant is reinstated. This case is remanded to the First Circuit Court of Appeal for its review of defendant's remaining assignments of error.
JUDGMENT REVERSED; CONVICTION AND SENTENCE REINSTATED; CASE REMANDED.
LEMMON, J., concurs and assigns reasons.
JOHNSON, J., dissents and will assign reasons.
LEMMON, J., Concurring.
This case raises concerns about the interrelationship between the sufficiency of the evidence standard in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and the circumstantial evidence rule in La.Rev.Stat. 15:438. However, any dichotomy between these two standards is unnecessary and may be confusing. State v. Chism, 436 So.2d 464 (La.1983)(Blanche, J., Concurring). The Jackson standard is constitutionally required by the Due Process Clause of the Fourteenth Amendment, while La.Rev. Stat. 15:438 is a statutory (not constitutional) standard of evidence that forms part of the inquiry by the finder of fact in assessing the evidence in a case where the evidence is circumstantial, in whole or in part.[1]Id.
In a case of circumstantial evidence, exclusion of every reasonable hypothesis of innocence is a component of the more comprehensive reasonable doubt standard. State v. Wright, 445 So.2d 1198 (La.1984). However, a single standard for appellate review, comporting with the sufficiency standard established in Jackson, is all that is constitutionally required. State v. Shapiro, 431 So.2d 372 (La.1982)(Lemmon, J., Concurring)("Reasonable doubt must be excluded by the totality of the evidence in order for the trier of fact to convict and for the reviewing court to affirm a conviction. Hypotheses of innocence are merely methods for the trier of fact to determine the existence of a reasonable doubt arising from the evidence or lack of evidence.").
In the present case, the overall evidence, both direct and circumstantial, (especially the evidence that the shooter told defendant he was going to shoot the gun when the fight started, that defendant gave the shooter the gun, that defendant told the shooter to give the gun back if he was not going to use it, and that defendant exhibited guilty knowledge by lying to the police about being in the car or knowing anything about the shooting) excludes the proffered hypotheses of innocence and was sufficient, viewed in the light most favorable to the prosecution, to convince a rational trier of fact beyond a reasonable doubt that defendant was a principal to the crime of attempted first degree murder.
JOHNSON, J., dissenting.
In order to support a conviction for attempted murder, the state must prove specific intent to kill pursuant to LSA-R.S. 14:30(A)(1), (3). In my view, the state has failed in its burden to prove the specific criminal intent required for a conviction.
This case resulted from a drive-by shooting in Morgan City where five shots were fired into a crowd and two victims were injured, one with a gunshot wound to the arm, the other to the leg.
The driver of the vehicle, James Waxter, and the shooter, Frederick Barrow, along with a fourth occupant of the car Evans Gibson, all testified at defendant's trial.
*87 Waxter and Gibson testified that Barrow's actions were spontaneous and unilateral.
The sole evidence of the defendant's specific criminal intent is Barrow's self-serving testimony that the defendant told him to give the gun back if he did not intend to shoot it.
The majority suggests that it is reasonable to infer that the defendant is guilty because he lied when confronted, and his deceptive statements evidenced a "guilty mind". The state is required to show more than the fact that the defendant failed to confess.
NOTES
[1] The first jury verdict was a nine to three verdict of guilty. After the jury was polled, the trial court set the verdict aside because it was insufficient for conviction. After further deliberation, the jury returned a ten to two verdict of guilty.
[2] The defendant was charged with two counts of attempted first-degree murder. Through an oversight, the verdict form presented to the jury mentioned only one count of first-degree murder. After being made aware of the oversight, the State specifically waived the second count.
[3] In addition to testifying at trial that defendant made this statement in the car, Barrow had sent a letter to the district attorney's office in which he described the evening's events, including defendant's statement about Barrow using the gun or giving it back to defendant.
[4] The names of the minor victims have been substituted with their initials in accordance with LA.REV.STAT. § 46:1844(W) which provides in pertinent part:

... to protect the identity and provide for the safety and welfare of crime victims who are minors under the age of eighteen years, all public officials, officers, and public agencies ... shall not publicly disclose the name, address, or identity of crime victims who at the time of the commission of the offense are minors under eighteen years of age. LA.REV.STAT. § 46:1844(W) (West 2000).
[5] Before the trial, Barrow pled guilty to two counts of attempted first-degree murder. Waxter pled guilty to one count of accessory after the fact. Neither of them had been sentenced before the trial of the defendant.
[6] Under the 1992 version of the second-degree murder statute, the offender had to have specific intent to kill. In 1993, LA.REV.STAT. § 14:30.1 was revised to include drive-by shooting as one of the crimes where the offender need not have specific intent to kill as long as a person was killed in the course of a drive-by shooting. Therefore, in Smith, the state had to prove specific intent to kill.
[1] "Although the circumstantial evidence rule may not establish a stricter standard of review than the more general reasonable juror's reasonable doubt formula, it emphasizes the need for careful observance of the usual standard, and provides a helpful methodology for its implementation in cases which hinge on the evaluation of circumstantial evidence." State v. Chism, 436 So.2d 464 (La.1983)(citing Torcia, Wharton's Criminal Evidence § 6 (13th ed.1972)).