MARION F. EDWARDS, Judge.
| ^Defendant, Chuck E. Jolly, was charged with a violation of LSA-R.S. 14:56, simple damage to property over $500. Following a bench trial, he was found guilty. On the same day, after waiving sentencing delays, he was sentenced to two years on home incarceration with the special conditions that he pay a fine of $300, that he pay restitution to the victim in the amount of $543.42, and that he pay court costs. In addition, Jolly was required to pay the costs of the electronic monitoring during his home incarceration. He appeals his conviction and sentence. For the following reasons we reverse.
Timothy Chan, the owner of the damaged BMW, testified that he parked his car in front of Jolly’s house, which was two houses down from a friend’s home, at about 4:00 p.m. on October 23, 2004. He did not know Jolly before this incident. *635 Chan testified that the scratches he found on his car when he was leaving were not on his car when he parked it. Chan was positive there were no scratches, because | she had just had his car cleaned and, after he parked the car, he viewed it as he walked around the back of the car and then the other side of it along the sidewalk. Chan testified that his insurance agent gave him an estimate amount of $543.42, and he paid a body shop that amount to repair his car.
Sidney Dugas, Jr., the next-door neighbor of both Jolly and of the friend whom Chan was visiting, testified that he lives at 6204 Morton Street. He testified that, on October 23, 2004, he learned about the incident and informed Chan, whom he had never met before, that he (Dugas) had a camera videotaping and that he was welcome to view the tape. Dugas testified that the videotape played for the court was the same one that he and Chan watched before it was given to the police and had not been altered or changed. Dugas identified Jolly on the tape as the man who got out of the truck. Dugas stated that for the past several years, there had been vandalism on both his house and vehicles, and that was the reason he placed a camera to tape Jolly’s front yard. He testified that Jolly’s front yard is the direction from which most of the vandalism has occurred. Every time his vehicle was damaged, it was on the side by Jolly’s house. Dugas testified that the vandalism included eggs and paint thrown on his car that destroyed the paint job, windows and lights shot out of two vehicles, and bullets in his house that he had to dig out.
Some of the vandalism to his cars occurred when they were parked on the street. After he moved the vehicle “inside the house,” the vandalism started to occur on the side of his house facing Jolly’s home. When these incidents occurred, he put up a big light and some cameras. Later, the light was shot out with a .22 caliber bullet. Dugas did not view the entire six-hour tape.
Jolly testified that, on the day of the incident, he returned from Wal-Mart and parked his pickup truck in his usual spot, on the curbside grass. When he | ¿arrived, he saw the BMW parked on the street, but he had no objection to it and had “no hard feelings.” When he first saw the car he thought it was his sister-in-law’s car, until he saw the BMW symbol. He had no idea who owned the auto, but he thought it might belong to someone at a neighbor’s party, even though no one was parked in front of that neighbor’s house. Jolly unloaded groceries from his front cab and then went around the back of the car by the tailgate to remove a flat spare tire from the bed, but his money fell out, approximately $300. He bent down behind his truck to pick his money up, lifted the tailgate, and then went back to Wal-Mart to have the tire fixed. Jolly testified that he purposefully drove off in the opposite direction of Dugas’ driveway, because Du-gas had accused him of “a lot of stuff,” in the past year. When he returned from Wal-Mart, approximately a half hour later, he saw the Jefferson Parish officer and thought that Dugas had called the police for him.
Jolly testified that he was not angry at anyone who owns a BMW and that he did not scratch, key, or cause the damage to the BMW. He also claimed not to have vandalized Dugas’ property. In fact, he claimed that his property was also vandalized, i.e., tires slashed and windshields broken, at the same time Dugas’ was damaged. Jolly stated that he knew that Du-gas thought he committed the acts of vandalism and had placed several cameras pointing in the direction of his house. He testified that he thinks the reason that *636 Dugas is always taping him is to catch him in an act that would affect his workers’ compensation claim, so he could sell the tape.
The videotape was played for the court. Chan is seen arriving four hours and forty-three minutes into the six-hour and six-minute videotape. He parks next to the curb, gets out, and turns toward the back of his car. An extraneous commercial is seen for the next eight seconds of the tape. When the tape resumes, |Bthere is no activity near Chan’s car until Jolly arrives five hours and twenty-seven minutes into the tape. He parks his truck on the curbside grass between the curb and the sidewalk. The truck completely obstructs the view of Chan’s car. Jolly exits his truck and walks around the back of Chan’s car to his passenger-side door. He then moves one or more bags in three successive trips to and from his property. On his last trip, Jolly walks to the back of his truck and puts down the tailgate. Next, he takes a step in the direction of Chan’s car, but abruptly stops. Then, he moves around the back of his car to the passenger side of his truck bed. He looks and reaches into his truck bed, and then another truck comes down the street. As the truck pulls into the driveway across the street, Jolly moves to the back of his truck and bends down by the driver’s-side corner of his truck bed. Next, he lifts the tailgate and then bends down again. After, standing up, he walks around to the passenger side and front of his truck before driving away. Jolly leaves, backing off the grass and down the street, five hours and thirty-one minutes into the tape. No one is seen by Chan’s car for the remainder of the videotape. Chan is never seen returning to his car.
The trial court found that Chan’s vehicle was “very clean,” and that the video showed Jolly stooping down on the side of the car where two scratches were found. Accordingly, the court determined the circumstantial evidence went beyond a reasonable doubt and excluded every hypotheses of innocence.
Jolly claims that the trial court erred in finding him guilty based on only circumstantial evidence, i.e., a videotape, especially when he offered a reasonable explanation. Jolly avers that he squatted down behind his truck, near the damaged car to retrieve money he dropped and that this explains all his actions on the videotape. Although he initially claimed he squatted down once, after viewing the tape, he admitted that he bent down twice to retrieve all of the money, which was |Bin twenty dollar bills. He also claims that the tape is incomplete because it did not record the entire time prior to Chan returning to his car. Therefore, he concludes that it is reasonable to assume that someone other than he could have scratched the car.
Simple criminal damage to property is the intentional damaging of any property of another, without the consent of the owner, and except as provided in R.S. 14:55, by any means other than fire or explosion. LSA-R.S. 14:56(A).
Evidence may be either direct or circumstantial. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience.[1] When circumstantial evidence is used to prove the commission of the offense, LSA-R.S. 15:438 mandates that assuming every fact to be proved that the evidence tends to *637 prove, to convict it must exclude every reasonable hypothesis of innocence.[2] However, this requirement of LSA-R.S. 15:438 does not establish a standard that is separate from the Jackson[3] standard, but instead provides a helpful methodology for determining the existence of reasonable doubt. To support the conclusion that the defendant is guilty beyond a reasonable doubt, all evidence, both direct and circumstantial, must be sufficient.[4]
When determining the existence of reasonable doubt where circumstantial evidence is involved, the appellate court does not determine whether another possible hypothesis suggested by a defendant could afford an exculpatory explanation of the events.[5] Instead, the, court must evaluate the evidence in the light most favorable to the prosecution and determine whether the possible | .¡.alternative hypothesis is sufficiently reasonable that the trier of fact could not have found proof of guilt beyond a reasonable doubt under Jackson.[6]
A determination of the weight of evidence is a question of fact that rests solely with the trier of fact.[7] The reviewing court must not impinge on the finding of fact, in a criminal case, except to the extent necessary to guarantee constitutional due process.[8] “Therefore, in order for a reviewing court to reverse a conviction based on an alternative hypothesis of innocence, the court must find that the jury could not have negated a potential alternative hypothesis.”[9]
“The actual trier of fact’s rational credibility calls, evidence weighing, and inference drawing are preserved ... by the admonition that the sufficiency inquiry does not require a court to ask itself whether it believes that the evidence at trial established guilt beyond a reasonable doubt.” ... The reviewing court is not called upon to determine whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.... Rather, the court must assure that the jurors did not speculate where the evidence is such that reasonable jurors must have a reasonable doubt.... [10]
(Citations omitted.)
In the present case, the court found the testimony of Chan and Dugas to be credible. However, in the absence of any eyewitness or other evidence, and considéring the remarks of the trial judge, we are bound to conclude that the only evidence upon which to find that Jolly was the perpetrator is the videotape. That tape, however, is incomplete. It does not evidence the time of day it was taken, and although Dugas testified that he set it to begin sometime on the morning of the incident, he did not know either what time he set it or the time the events depicted took place. The tape ends before Chan returned to his car and discovered the Ldamage. The amount of time missing is *638 unknown. The car was parked on the street for an undetermined period of time for which the videotape does not account. Considering the evidence presented at trial, we find that the court could not have negated the sufficiently reasonable alternative hypothesis that someone else scratched the car.
For the foregoing reasons, the conviction is reversed.

REVERSED.

. State v. Harris, 03-1297 (La.App. 5 Cir. 3/30/04), 871 So.2d 599, 609-610, writ denied, 04-1287 (La.10/29/04), 885 So.2d 583, and writ denied, 04-1289 (La.10/29/02), 885 So.2d 584.

. State v. Lathers, 03-941 (La.App. 5 Cir. 2/23/04), 868 So.2d 881, 884.

. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

. State v. Lathers, supra.

. See, State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012, 1020, cert. denied, 513 U.S. 975, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994).

. State v. Pagan 04-1478 (La.App. 5 Cir. 5/31/05), 905 So.2d 435.

. State v. Upchurch, 00-1290 (La.App. 5 Cir. 1/30/01), 783 So.2d 398, 402.

. State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78, 83.

. Id.

. Id.