16-333 (La.App. 5 Cir. 12/7/16)

**STATE of Louisiana**

v.

**Clarence SAYLES**

**NO. 16–KA–333**

Court of Appeal of Louisiana, Fifth Circuit.

December 07, 2016

COUNSEL FOR PLAINTIFF/APPEL-LEE, STATE OF LOUISIANA, Paul D. Connick, Jr., Terry M. Boudreaux

COUNSEL FOR DEFENDANT/AP-PELLANT, CLARENCE SAYLES, Gwendolyn K. Brown

Panel composed of Jude G. Gravois, Robert A. Chaisson, and Stephen J. Windhorst

## CHAISSON, J.

In this appeal, defendant, Clarence Sayles, challenges the sufficiency of the evidence used to convict him of theft of goods. For the reasons set forth herein, we affirm defendant's conviction and sentence.

## PROCEDURAL HISTORY

On February 19, 2015, the Jefferson Parish District Attorney filed a bill of information charging defendant with theft valued at over $750.00, in violation of La. R.S. 14:67. At the February 20, 2015 arraignment, defendant pled not guilty. The State thereafter amended the bill of information to charge defendant with theft of goods, a violation of La. R.S. 14:67.10, in that he committed theft of a television valued at over $500.00 from Wal–Mart. On October 28, 2015, defendant proceeded to trial before a six-person jury on the amended charge. After considering the testimony and evidence presented, the jury found defendant guilty as charged.[1]

On November 12, 2015, defendant filed a motion for new trial on the basis that the law and evidence did not support his conviction. The trial court denied defendant's motion and thereafter sentenced him to imprisonment at hard labor for one year. The trial court suspended the sentence and placed defendant on active probation for one year subject to various special and general conditions. Defendant now appeals, challenging the sufficiency of the evidence used to convict him of theft of goods having a value of $500.00 or more.

## FACTS

This case arises from an incident that occurred at a Marrero Wal–Mart on December 4, 2014, in the morning hours when the store was not that busy. On that date, sometime after 7:00 a.m., April Stelljes, a customer service manager, noticed a customer with a television walk around her register to a register where no employee

---

1. Defendant was also charged in a separate bill of information with two counts of resisting an officer, in violation of La. R.S. 14:108. These two misdemeanor offenses proceeded to a bench trial simultaneously with the jury trial for the felony theft. At the conclusion of the proceedings, the trial judge found defendant guilty of both misdemeanor counts (24th Judicial District Court Case Number 15–1037). These misdemeanor convictions are presently before this Court for review in Case Number 16–KP–334, which contains the transcript of the trial proceedings.

was stationed. The customer, later identified as defendant, then continued to walk past all the registers towards the entrance of the store. Pursuant to usual store policy when merchandise is not in a bag, a Wal–Mart employee stopped defendant and asked him to produce a receipt for the Vizio television in his shopping cart.

Defendant turned over a receipt that showed that a sixty-inch television with a price of $798.00[2] had been purchased with cash at 7:12 a.m. that day. While inspecting the receipt, the employee, who was being assisted by Ms. Stelljes, determined that the Universal Product Code ("UPC") on the receipt matched that on the television. When the employees then tried to check the serial number, defendant took the receipt from them. However, the employees ultimately determined that the serial number on the receipt, which ended in "144," did not match the serial number on the television in his shopping cart, which ended in "143." By this time, Daniel Patterson, the store manager, had arrived, was apprised of the situation, and confirmed that the serial numbers did not match. This encounter between Wal–Mart employees and defendant was captured on the store's surveillance video camera. This video clip, which was played at trial, reflected defendant was stopped by the employees at 7:24 a.m. At approximately 7:27 a.m., defendant called 9–1–1 and reported that he had been grabbed and was being unlawfully detained by Wal–Mart employees when he was trying to leave the store with a television he had purchased. Deputies Alvin Farris and William West of the

Jefferson Parish Sheriff's Office responded to the call, and upon their arrival, they spoke to defendant and to Wal–Mart personnel. During this investigatory stage, additional information about the incident was discovered. In particular, the store's surveillance camera showed defendant, at 7:20 a.m., picking up a Vizio television from an aisle display and putting it in his shopping cart. Additionally, an African American female was observed purchasing a similar television earlier that morning and leaving the building with the television at 7:13 a.m. Mr. Patterson, after reviewing other surveillance video and the electronic version of paper receipts, matched defendant's receipt to the television bought earlier by the African American female.

After hearing both sides of the encounter, comparing the receipt to the television in defendant's shopping cart, and considering all available information, the officers decided to arrest defendant for theft of the television. According to the officers, defendant was uncooperative, refused to provide them with identification, fell to the ground, and refused to walk on his own to the loss prevention office. Defendant's interaction with the officers was captured on the store's surveillance camera at 7:54 a.m. and was played at trial.

## SUFFICIENCY OF THE EVIDENCE

■ On appeal, defendant argues that the evidence presented by the State was insufficient to support his felony conviction for theft of goods, and therefore, the trial judge erred by denying his motion for new trial.[3] Defendant specifically contends that

---

**2.** The receipt reflects the total purchase price, with tax included, to be $867.83.

**3.** Defendant filed a motion for new trial on the basis that the law and evidence do not support his conviction for theft. On appeal, defendant challenges the denial of his motion. Although this Court has recognized that the

denial of a motion for new trial based on the verdict being contrary to the law and evidence is not subject to review on appeal, both the Louisiana Supreme Court and this Court have still addressed sufficiency claims under these circumstances. *State v. Bazley*, 09–358 (La.App. 5 Cir. 1/11/11), 60 So.3d 7, 19, *writ denied*, 11–282 (La. 6/17/11), 63 So.3d 1039.

the evidence was insufficient to exclude the reasonable hypothesis that he paid for the television and that the bar code was typed or scanned incorrectly.

■ The appropriate standard of review for determining the sufficiency of the evidence is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Both the direct and circumstantial evidence must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. *State v. Harrell*, 01–841 (La. App. 5 Cir. 2/26/02), 811 So.2d 1015, 1019.

■ When circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 provides: "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." The reviewing court is not required to determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events. Rather, the reviewing court must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. *State v. Mitchell*, 99–3342 (La. 10/17/00), 772 So.2d 78, 83.

■ In the instant case, defendant was convicted by a jury of theft of goods having a value of $500.00 or more, in violation of La. R.S. 14:67.10. In order to establish defendant's guilt for this crime, the State was required to prove beyond a reasonable doubt: (1) that defendant misappropriated or took; (2) a thing of value; (3) which is held for sale by a merchant; (4) either without the consent of the mer-chant to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations; and (5) that defendant had the intent to deprive the merchant permanently of that which is the subject of the misappropriation or taking. *State v. Green*, 02–883 (La.App. 5 Cir. 1/28/03), 839 So.2d 286, 288, *writ denied*, 03–848 (La. 10/31/03), 857 So.2d 474. Theft is a crime of specific intent. *State v. Carey*, 04–1073 (La. App. 5 Cir. 3/29/05), 901 So.2d 509, 512. Specific criminal intent is defined as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1). In addition, the State was required to prove the value of the stolen property, since the determination of the severity of the offense and the degree of punishment upon conviction depends upon the value of the stolen goods. *State v. Banks*, 05–830 (La.App. 5 Cir. 2/27/06), 924 So.2d 1059, 1062.

In order to prove the elements of the offense at trial, the State presented the testimony of four witnesses: Ms. Stelljes, the Wal–Mart customer service manager; Mr. Patterson, the Wal–Mart store manager; and Deputies West and Farris, the two officers who responded to the 9–1–1 call. In addition, the State offered surveillance videotapes from Wal–Mart and photographs of defendant's receipt, the television in his basket, and the serial number on that television.

The Wal–Mart surveillance videotape showed that on December 4, 2014, at 7:20 a.m., defendant approached a display of sixty-inch televisions located on one of the store's main aisles, picked up one of the boxes containing the television, and put it in his shopping cart. Ms. Stelljes, who was stationed by a register at the front of the store, testified that she noticed a customer walk around her register to a register

where no employee was stationed. The customer, later identified as defendant, then continued to walk past all the registers towards the entrance of the store with the television. As he attempted to leave the store with the merchandise, Ms. Stelljes and another Wal–Mart employee stopped defendant to check his receipt.

According to the evidence presented at trial, defendant turned over a receipt that showed that a sixty-inch television with a price of $798.00 had been purchased with cash at 7:12 a.m., which is prior to the time defendant was seen putting the television in his shopping cart. Through further inspection of the receipt, the employees determined that the UPC on the receipt matched the one on the box containing the television. However, when the employees then tried to check the serial number, defendant took the receipt from them. The employees ultimately determined that the serial number on the receipt, which ended in "144," did not match the serial number on the television in his shopping cart, which ended in "143."

By this time, Mr. Patterson, the store manager, had arrived, was apprised of the situation, and confirmed that the serial numbers did not match. This encounter between Wal–Mart employees and defendant was captured on the store's surveillance video camera. This video clip, which was played at trial, reflected that defendant attempted to leave the store and was stopped by the employees at 7:24 a.m. At trial, Mr. Patterson testified about his investigation of the incident, which included reviewing surveillance videos and electronic receipts. His testimony revealed that the serial number on defendant's receipt actually matched a television that was sold to an African American woman on December 4, 2014, at 7:12 a.m. A surveillance video that was introduced at trial confirmed that an African American woman with a television set in her shopping cart left Wal–Mart at 7:13 a.m.

The evidence introduced at trial further revealed that defendant called 9–1–1 to report that he was being unlawfully detained at Wal–Mart. According to the officers, defendant refused to give them his full name or cooperate, and he also fell to the ground for no apparent reason and refused to walk on his own to the loss prevention office.

This evidence, presented by the State at trial, clearly proved that defendant took the television without the consent of Wal–Mart and by means of fraudulent conduct with the intent to deprive Wal–Mart permanently of that television. In addition, the State proved the value of the stolen property. The receipt, introduced at trial, established that the cost of the television plus the tax was $867.83, and the sign next to the televisions and the testimony established that the televisions were for sale for $798.00 each.

In challenging his conviction on appeal, defendant contends that the evidence presented by the State was insufficient to exclude the reasonable hypothesis that he paid for the television and that the bar code was typed or scanned incorrectly. To support this argument, defendant points out that he produced a receipt for the television when asked by the Wal–Mart employees. He further asserts that although the serial number on the receipt did not match the television by one number, the Wal–Mart manager conceded that when bar codes do not scan properly, they are typed in by hand and that there was no way to know whether that happened in this case. Further, defendant maintains that although his receipt showed the television had been purchased at 7:12 a.m., and the Wal–Mart video showed him selecting the television at 7:20 a.m., the Wal–Mart manager admitted that the times on the

videotape and the receipts could have been off. Defendant also contends that this theory is supported by the fact that he had $2,000.00 in his pocket, which was sufficient to pay for the television, and by the fact that defendant, not Wal–Mart employees, called the police after Wal–Mart employees accused him of theft.

In the present case, the jury was presented with evidence that defendant produced a receipt, called the police, and had money in his pocket. Further, the jury heard Mr. Patterson's testimony regarding the scanning of items. At trial, Mr. Patterson explained that the bar code on the television would have been scanned at the time of purchase, and the cashier would have been prompted to scan the serial number at that point. He indicated that the serial number would then "pop up" through the computer onto the receipt. Mr. Patterson asserted that there was no way someone could have accidentally typed in one number off. Moreover, he testified that, after reviewing other surveillance video and the electronic version of paper receipts, he matched defendant's receipt to the television bought earlier by an African American female, who exited the store at 7:13 a.m.

The jury heard further testimony from Mr. Patterson that the videos and the cash registers were not on the same system and that it was possible those times could have been different. Further, he admitted that sometimes scanners did not work, that sometimes numbers had to be manually punched in, and that it was possible that happened in the instant case. Nevertheless, Mr. Patterson testified that there was no indication that the times were off on that day or that the bar code had to be manually entered that day.

After considering all of the evidence, the jury obviously believed the State's witnesses and rejected defendant's theory

that he paid for the television and that the bar code was typed or scanned incorrectly. The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness; the credibility of the witnesses will not be reweighed on appeal. *State v. Rowan*, 97–21 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056.

In light of the foregoing, we conclude that a rational trier of fact could have found that the evidence was sufficient under the *Jackson* standard to support the theft of goods conviction and that it excluded every reasonable hypothesis of innocence. Accordingly, we find that the arguments raised by defendant relating to the sufficiency of the evidence are without merit.

## ERRORS PATENT REVIEW

The record was reviewed for errors patent, according to La. C.Cr.P. art. 920; *State v. Oliveaux*, 312 So.2d 337 (La. 1975); and *State v. Weiland*, 556 So.2d 175 (La. App. 5th Cir. 1990). Our review reveals that defendant was given an incomplete advisal regarding the post-conviction period under La. C.Cr.P. art. 930.8. While the commitment reflects that defendant was given a proper advisal, the transcript indicates that the trial court advised defendant that he had "two years after the judgment of conviction to set it aside." This Court has held that the failure to advise a defendant that the prescriptive period runs from the time his conviction and sentence become final is incomplete. *State v. Grant*, 04–341 (La.App. 5 Cir. 10/26/04), 887 So.2d 596, 598.

If a trial court fails to advise, or provides an incomplete advisal, pursuant to La. C.Cr.P. art. 930.8, the appellate court may correct this error by informing the defendant of the applicable prescriptive period for post-conviction relief by means

of its opinion. Accordingly, we now advise defendant that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C.Cr.P. arts. 914 or 922. *See State v. Oliver*, 14–428 (La.App. 5 Cir. 11/25/14), 165 So.3d 970, 978, *writ denied*, 14–2693 (La. 10/9/15), 178 So.3d 1001.

Accordingly, for the reasons set forth herein, we affirm defendant's conviction and sentence for theft of goods valued at $500.00 or more.

## CONVICTION AND SENTENCE AFFIRMED