831 So.2d 433 (2002)
STATE of Louisiana
v.
John J. CHO.
No. 02-KA-274.
Court of Appeal of Louisiana, Fifth Circuit.
October 29, 2002.
*438 Martin E. Regan, Jr., Kris A. Moe, New Orleans, LA, for Appellant John J. Cho.
Paul D. Connick, Jr., District Attorney, Alan D. Alario, IICounsel of Record on Appeal, Terry M. BoudreauxAppellate Counsel, Assistant District Attorneys, Gretna, la, for Appellee State of Louisiana.
Panel composed of Judges JAMES L. CANNELLA, MARION F. EDWARDS and CLARENCE E. McMANUS.
JAMES L. CANNELLA, Judge.
The Defendant, John Ju Cho a/k/a Ju J. Cho, appeals from his conviction of attempted possession of marijuana with intent to distribute and from his sentence as a third felony habitual offender. We affirm the conviction and sentence and remand.
On January 12, 2002, the Defendant was charged with possession of marijuana with intent to distribute, a violation of La.R.S. 40:966A. He pled not guilty and filed various pre-trial motions, including two motions to suppress the evidence. On July 11, 2000, the trial judge denied the motions to suppress the evidence.
The Defendant was tried by a 12 member jury on October 25 and 26, 2000. At the conclusion of trial, the jury returned a verdict of guilty of the lesser charge of attempted possession with intent to distribute marijuana, La. R.S. 40:979, La. R.S. 40:966A. On December 4, 2000, the trial judge sentenced the Defendant to ten years imprisonment at hard labor. The State filed a habitual offender bill of information on the same day, alleging the Defendant to be a third felony offender. On January 26, 2001, the Defendant denied the habitual offender bill of information. The Defendant appealed his conviction.
On February 2, 2001, a habitual offender hearing was held and the trial judge found the Defendant to be a third felony offender, vacated his original sentence, and imposed an enhanced sentence of life imprisonment at hard labor, without benefit of parole, probation or suspension of sentence. The Defendant made an oral motion for appeal.

FACTS
On November 18, 1999, Lieutenant Gerard Simone of the Jefferson Parish Sheriff's Office (JPSO), assigned to the Narcotics Interdiction Unit at Armstrong International Airport, testified that he watched a man purchase a passenger ticket at the Southwest Airlines ticket counter and then leave the building. Lt. Simone's suspicions were aroused because the transaction took an unusually long time, the man was unable to produce picture identification and he paid cash for the ticket.
*439 After the man left the building, Lt. Simone questioned the ticket agent about the transaction. He learned that the subject had bought a round-trip ticket for Rene Hernandez (Hernandez), for a flight originating in Arlington, Texas and arriving in New Orleans on that day. The return flight was scheduled for later that afternoon. Lt. Simone testified that it is common for drug traffickers to purchase airline tickets in cash and that the route between Texas and New Orleans is a major corridor for marijuana distribution.
Lt. Simone, accompanied by a United States Customs agent, waited in the concourse for the flight to arrive. Lt. Simone identified Hernandez when he exited the airplane. He carried no luggage. They followed him to the airport lobby and observed that he appeared to be waiting for someone. Lt. Simone approached Hernandez and identified himself as a police officer. Hernandez voluntarily answered Lt. Simone's questions and produced his airline ticket and identification when requested. He informed the officers that he was in the city to visit his friend Mario Gonzalez (Gonzalez).[1]
Subsequently, two men arrived in a green Isuzu Rodeo car to pick up Hernandez. The Defendant was the driver and the passenger was Gonzalez. Lt. Simone recognized Gonzalez as the man who earlier had purchased the airline ticket. Lt. Simone asked Gonzalez to exit the vehicle and he complied. When Lt. Simone asked Gonzalez for identification, he could not produce any. He asked Gonzalez whether he knew Hernandez. Gonzalez responded that Hernandez was his friend and that he was in town to visit him for several weeks. Gonzalez said that he did not know who had purchased Hernandez' airline ticket and denied having bought it himself.
Lieutenant Simone asked the Defendant for identification and he produced a Louisiana driver's license. The Defendant stated that he did not know Gonzalez or Hernandez and that he had driven Gonzalez to the airport as a favor to a friend. The Defendant said that Gonzalez was staying at the Travelodge Hotel on Veterans Highway. Lt. Simone asked the Defendant for permission to search his vehicle and he consented. A cursory search of the vehicle revealed nothing and Lt. Simone allowed the Defendant to leave the airport. Lt. Simone then asked Gonzalez and Hernandez to accompany him to his office in the airport and they agreed to do so.
A criminal background check of Gonzalez revealed that he had been arrested in Dallas a month earlier. Gonzalez told Lt. Simone that he was willing to cooperate with police. He admitted that he had arrived in the New Orleans area two days earlier and had delivered 15 pounds of marijuana to the Defendant at the Defendant's residence. Gonzalez said he was staying at the Defendant's house. The address that Lt. Simone had recorded from the Defendant's driver's license was 21 Incarnate Word Drive in Kenner. Gonzalez said that he had transported the marijuana to the house in his own gray Nissan car.
Lt. Simone alerted other agents at the JPSO and the Kenner Police Department (KPD) about the information that Gonzalez had given him. Based on that information, officers from both agencies went to the Defendant's house. Lt. Simone transported Gonzalez to the Defendant's residence, while other agents took Hernandez there.
At the Defendant's residence, Lt. Simone met with Detective George Ansardi, a narcotics investigator with the KPD and informed him of the facts he had gathered *440 up to that point. Detective Ansardi used the information to prepare and obtain a search warrant for the Defendant's residence.
Detective Ansardi testified that none of the other officers went inside the Defendant's house until he arrived with the signed search warrant. Sergeant Ronald LaBarriere of the KPD's K-9 unit testified that he waited at the house until the search warrant arrived and did not see anyone go inside. The Defendant was not at home at the time that the officers arrived. When the Defendant returned to his residence and saw officers waiting outside, he attempted to flee. He was stopped by police and was held outside of his house while the officers entered by using a key that the Defendant had given to them.
Sergeant LaBarriere performed a sweep of the three-bedroom residence with a narcotics dog, who alerted him to several drug locations in the house. The dog also alerted the officers to drugs in a Nissan car in the garage. Detective Ansardi and other officers then proceeded to check the areas indicated by the dog.
The search of the house produced a Rave store shopping bag containing a clear plastic bag of marijuana, marijuana and cigarette rolling papers in plain view on the living room floor, marijuana cigarettes in ashtrays in various locations around the house, and a bottle of Ultimate Blend, a carbohydrate drink which purports to rid the body of "impurities" and is used before a drug screening. The officers found nine pounds of marijuana packaged in one pound amounts in clear plastic bags under some blankets in the closet of the northwest bedroom and several ounces of marijuana in a clear plastic bag in the southeast bedroom, hidden between the bed's mattress and box spring. They also found what appeared to be a marijuana processing station in the northwest bedroom. There was no bed in the room and no clothes in the closet. The room contained a digital weighing scale located on the top of a desk and "shake" marijuana residue was found on the desk and on the cement floor. Various bills and correspondence bearing the Defendant's name were found in the room.
The officers searched the Nissan car and seized $2,345 in cash, Western Union wire transfer receipts, a $1,000 money order listing the Defendant as the sender and Hernandez as the recipient, and a $500 money order listing Gonzalez as the sender and Hernandez as the recipient. No marijuana was found. The officers also found a paper with tabulated figures in the car. Among the figures were 15 entries for $500 each, for a total of $7,500. Detective Ansardi testified that $500 is the going rate for a pound of marijuana. The figures also included $180 for 15, which the Detective stated was for service charges and finder's fees. A Southwest Airlines passenger ticket, dated November 18, 1999, was also found in the car. Hernandez was listed as the passenger and Gonzalez as the purchaser. The flight originated in Arlington, Texas. Lt. Simone testified that it was his understanding that both Gonzalez and Hernandez resided in Texas.
Officer Edward Rhode, a crime scene technician with the KPD, photographed the house. He testified that the photographs, State's Exhibits 16 through 46, accurately depict the house as it looked at the time of the search.
Daniel Waguespack (Waguespack), a forensic scientist with the Jefferson Parish Crime Lab, testified that he performed chemical tests on several evidence samples. He stated that State's Exhibit 2, a small amount of vegetative material rolled in white paper, tested positive for marijuana. He also randomly tested nine plastic *441 bags of vegetative material (State's Exhibits 3 through 11), finding them positive for marijuana. The gross weight of the nine packages was 9.4 pounds. Waguespack also testified that State's Exhibits 13 and 14, bags of loose vegetative material, tested positive for marijuana. The gross weight of State's Exhibit 13 was 454.9 grams, or about one pound. State's Exhibit 15 was identified as several cigarette butts and loose vegetative material, which also tested positive for marijuana.
Sergeant Bruce Harrison of the JPSO was qualified as an expert in the use, packaging, distribution, trafficking, and value of narcotics. He testified that the quantity and value of marijuana seized in this case, along with the scale and written documentation found in the house and car, indicates the intent to distribute marijuana.[2] Sgt. Harrison testified that the factors which he used in determining whether subjects are engaged in simple possession of marijuana or in the distribution of the drug are the quantity of the drug in the subject's possession, whether the drug is packaged for sale or for individual use, and the value of the drug. According to Sgt. Harrison, the average marijuana user would most likely have a smaller quantity and would possess user paraphernalia such as cigarette rolling papers, hollowed-out cigars, and smoking devices. Those involved in distribution of marijuana would possess large quantities of the drug and it would be packaged for sale. Drug dealers also commonly have communication devices such as pagers, cellular telephones, facsimile machines, and documentation of transactions.
Sgt. Harrison testified that one of the one-pound bags of marijuana seized in the search would sell for between $800 and $1,200 on the street. In his opinion, one pound of marijuana would make 448 large marijuana cigars ("blunts"). Ten pounds would make 4,448 cigars. It would take the average marijuana user well over a year to consume that amount of marijuana, assuming he smoked ten marijuana cigarettes a day. He further stated that $500 is the going price for a pound of marijuana from Texas. In addition, there are fees for delivery of the drug. He identified paperwork found in the Nissan car during the search as a drug tally sheet and testified that the figures on the sheet were consistent with the sale of 15 pounds of marijuana at $500. The paper contains 15 entries of $500 each.
Sgt. Harrison testified that it is common for drug traffickers to transfer large amounts of money in several small increments, so as to allay suspicion by police. These transfers are usually made by wire, to eliminate the risk to the parties of carrying large amounts of money. They commonly use false names in making such transfers, but there is usually something in the name or address that gives a clue as to the parties involved. Consistent with this practice is the documentation of a $1,000 money order found in the Nissan car during the search. It was made payable to Hernandez in Edinburgh, Texas and the sender's name was listed as Ju Cho, 21 Incarnate Word Drive. The officers also uncovered documentation of a $500 money order sent to Hernandez by Gonzalez. The paperwork found in the Nissan car also documents wire transfers in amounts consistent with the sale of marijuana in $500 increments.
A defense witness, Aaron Joseph (Joseph), testified that he, not the Defendant, *442 bought marijuana from Gonzalez. Joseph stated that he rented the house from the Defendant, whose mother was the owner and that the Defendant was not living there at the time of his arrest. Joseph said that he had purchased ten pounds of marijuana from Gonzalez that he planned to sell, but that this was the first time he had ever set out to deal marijuana. He claimed that the Defendant did not know that there were drugs in the house. He never told the Defendant about the marijuana and he hid the drugs in a closet to conceal it from him. Joseph testified that Gonzalez owned the Nissan car parked in the garage. Joseph was in Biloxi with his girlfriend at the time police searched the house. He claimed that he had a party at the house the night before the police search.
On appeal, the Defendant asserts that the evidence is insufficient to support the conviction, the trial judge erred in denying the motion to suppress evidence, the trial judge erred in permitting hearsay testimony of an unavailable witness, the trial judge erred in denying a mistrial after other crimes evidence was referred to by Lt. Simone and Detective Ansardi, the trial judge erred in sustaining the State's objection to questions by the Defendant regarding Gonzales' police record, and the trial judge erred in failing to give an instruction on judicial confession, or declaring a mistrial, after the defense objected to the prosecutor's improper closing argument. The Defendant also contends that the sentence is constitutionally excessive.

INSUFFICIENT EVIDENCE
The standard for appellate review of the sufficiency of evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); State v. Mitchell, 99-3342, p. 7 (La.10/17/00), 772 So.2d 78, 82; State v. Williams, 99-223, p. 6 (La. App. 5th Cir.6/30/99), 742 So.2d 604, 607.
Under Jackson, a review of a criminal conviction record for sufficiency of evidence does not require a court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Mitchell, 99-3342 at p. 7, 772 So.2d at 83. A reviewing court is required to consider the whole record and determine whether a rational trier of fact would have found guilt beyond a reasonable doubt. Id.
In cases involving circumstantial evidence, the evidence must exclude every reasonable hypothesis of innocence. La. R.S.15:438; Mitchell, 99-3342 at p. 7, 772 So.2d at 83. However, the reviewing court "does not determine whether another possible hypothesis suggested by a defendant could afford an exculpatory explanation of the events." State v. Davis, 92-1623, p. 11 (La.5/23/94), 637 So.2d 1012, 1020. Rather, the court must evaluate the evidence in a light most favorable to the state and determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. Id. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. Williams, 99-223 at p. 8, 742 So.2d at 608.
The crime of possession with intent to distribute marijuana requires proof that the defendant knowingly and intentionally possessed the drug and that he did so with the specific intent to distribute it. State v. Snavely, 99-1223, p. 11 (La.App. 5th Cir.4/12/00), 759 So.2d 950, 958, writ *443 denied, 00-1439 (La.2/16/01), 785 So.2d 840. Guilty knowledge is an essential element to the crime of possession of contraband, and such knowledge may be inferred from the circumstances. State v. Manson, 01-159, p. 16 (La.App. 5th Cir.6/27/01), 791 So.2d 749, 761. Possession includes both "actual" and "constructive" possession. State v. Brisban, 00-3437, p. 8 (La.2/26/02), 809 So.2d 923, 929.
A person not in physical possession of a drug may have constructive possession when the contraband is under that person's dominion and control. State v. Schieffler, 00-1116, p. 4 (La.App. 5th Cir.2/13/02), 812 So.2d 7, 9. The key factors to be considered in determining whether a defendant exercised dominion and control sufficient to constitute constructive possession are the defendant's knowledge that illegal drugs were in the area, his relation with a person found to be in actual possession, the defendant's access to the area where the drugs were found, evidence of recent drug use by the defendant, the existence of drug paraphernalia, and evidence that the area was frequented by drug users. Id.; State v. Manson, 01-159 at pp. 6-7, 791 So.2d at 761.
"Attempt" is defined by La.R.S. 14:27A as follows:
Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
There was ample evidence that the Defendant attempted to possess marijuana with the intent to distribute it. Gonzalez admitted to Lt. Simone at the airport that he had delivered 15 pounds of marijuana to the Defendant at the Defendant's house. Gonzalez said that he had transported the marijuana to the Defendant in his own car, which was parked in defendant's garage at the time of the search and which contained more than $2,000 in cash. The documents found in the car are consistent with and indicative of drug activity. The address of the house in which the drugs were found was listed as the Defendant's address on his driver's license. The officers stationed outside the house saw the Defendant approach the house and then attempt to flee when he saw them, creating the inferences that the Defendant was living there and that he was engaged in criminal activity. In addition, the Defendant gave the investigating officers a key with which to enter the house and several documents were found in the house addressed to Ju Cho (a name used by Defendant) at that address. These included a power company bill with a due date of November 23, 1999, a bank statement dated October 31, 1999, and a notice of reinstatement from an insurance company, postmarked October 20, 1999.
The contents of the house at the time the search warrant was executed shows that it was the scene of drug activity. The remains of marijuana cigarettes were found in ashtrays and large quantities of marijuana were found concealed in various places and in plain view. The officers found a digital scale in a room with marijuana residue on the concrete floor, indicative of drug distribution.
Defendant argues that the State's case was refuted by the testimony of Joseph. However, he admitted that only a few of his belongings were found in the house, the utilities were not in his name, and he did not receive his mail at that address. There was no physical evidence to support his claim that he lived there. In addition, Joseph testified that he was supposed to pay Gonzalez $2,000 for the marijuana, but *444 Sgt. Harrison stated that the Texas supplier would have incurred a loss on the transaction if he only received $2,000 for the large amount of marijuana found in the house.
When the trier-of-fact is confronted by conflicting testimony, the determination of that fact rests solely with that judge or jury, who may accept or reject, in whole or in part, the testimony of any witness. State v. Cazenave, 00-183, p. 14 (La.App. 5th Cir.10/31/00), 772 So.2d 854, 860, writ denied, 00-3297 (La.10/26/01), 799 So.2d 1151. It is not the function of the appellate court to assess the credibility of witnesses or to re-weigh the evidence. Id.; State v. Marcantel, 00-1629, p. 9 (La.4/3/02), 815 So.2d 50, 56. In this case, the jury apparently found the State's evidence more credible than Joseph's testimony. Under the Jackson analysis, then, we find that the Defendant's conviction was based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt.

MOTION TO SUPPRESS THE EVIDENCE
The Defendant next asserts that the trial judge erred in denying his motions to suppress the evidence. He argues that the search warrant obtained by Detective Ansardi was defective because he misrepresented facts and did not sufficiently support the reliability of the informant's hearsay statements.
A person is constitutionally protected against unreasonable search and seizure of his house, papers and effects. Thus, a search and seizure of such shall only be made upon a warrant issued on probable cause, supported by oath or affirmation, and particularly describing the place to be searched and thing(s) to be seized. U.S. Const. amend. IV; La. Const. art. I, § 5 (1974). State v. Casey, 99-0023, p. 3 (La.1/26/00), 775 So.2d 1022, 1027. Probable cause sufficient to issue a warrant "exists when the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that an offense has been committed and that evidence or contraband may be found at the place to be searched." State v. Johnson, 408 So.2d 1280, 1283 (La.1982). See: Casey, 99-0023 at 3-4, 775 So.2d at 1027-1028. A police officer need only provide the issuing magistrate with sufficient information to make an independent judgment that probable cause exists to issue a warrant. State v. Horton, 01-2529, p. 6 (La.6/21/02), 820 So.2d 556, 560.
In determining whether an informant's tip is sufficient to provide a basis for finding probable cause:
The issuing magistrate must make a practical, common sense decision whether, given all the circumstances set forth in the affidavit, a fair probability exists that the evidence of a crime will be found in a particular place. State v. Byrd, 568 So.2d 554, 559 (La.1990). Additionally, a search warrant must establish a probable continuing nexus between the place sought to be searched and the property sought to be seized. State v. Weinberg, 364 So.2d 964, 968 (La.1978). Further, an affidavit must contain, within its four corners, the facts establishing the existence of probable cause for issuing the warrant. State v. Duncan, 420 So.2d 1105, 1108 (La.1982).
Casey, 99-0023 at p. 4, 775 So.2d at 1028.
Detective Ansardi alleged the following in his search warrant application:
On November 18, 1999, at approximately 1320 hours, this reporting detective met with Lt. Keith Simone of the *445 Jefferson Parish Sheriff's Office at # 21 Incarnate Word, Kenner Louisiana. Lt. Simone advised that earlier this morning while assigned to the narcotics unit at the New Orleans International Airport, he observed a Hispanic male later identified as Mario Gonzalez, purchase an airline ticket departing Harlingen, Texas and arriving in New Orleans at 12:15 p.m. with a return flight scheduled for 3:25 p.m. The ticket was purchased for a Rene Hernandez. This is common practice used during the trafficking of illegal narcotics. South Texas to New Orleans is a major corridor for the distribution of marijuana.
Lt. Simone and assisting units awaited the arrival of Rene Hernandez. At approximately 1215 hours, Rene Hernandez arrived, without luggage and proceeded to the passenger pickup area. At which time, Lt. Simone conducted a field interview regarding his suspicious activity. During the interview, Lt. Simone observed a green Isuzu Rodeo arrive with Mario Gonzalez in the passenger seat and Ju Cho driving. Both were observed waving at Rene Hernandez. Lt. Simone approached the stopped vehicle and separated Mario Gonzalez and Ju Cho. Lt. Simone interviewed Mario Gonzalez after advising him of his constitutional rights. Mario Gonzalez first was reluctant to give the information regarding the person who arrived at the airport. Then he advised that he was a friend and was in town for several weeks, which contradicted the statement given by Rene Hernandez. While interviewing Ju Cho, he advised that he did not know either one of the subjects and was just giving a ride for a friend of a friend. Ju Cho could not advise a friend's name and stated that he picked Mario Gonzalez up at the Travel Lodge. Mario Gonzalez stated that he had been staying with Ju Cho for the past couple of days at his residence of 21 Incarnate Word, Kenner, Louisiana. Lt. Simone allowed Ju Cho to leave at the conclusion of the field interview.
Mario Gonzalez then began cooperating more with Lt. Simone. He advised Lt. Simone that he had just delivered fifteen (15) pounds of marijuana to Ju Cho at his residence located at 21 Incarnate Word, Kenner, Louisiana. Mario Gonzalez advised that he delivered the marijuana in a gray 1982 Nissan 280 ZX. He advised that the vehicle is currently stored in the garage of 21 Incarnate Word.
This detective could observe a gray Nissan 280 ZX in the garage of 21 Incarnate Word from a window on the side of the garage, in plain view. This detective has arrested Ju Cho in the past for 24 pounds of marijuana under Kenner Item # X-XXXXX-XX and was currently under investigation by this detective for the past three months for additional possible narcotics violations.
While assisting detectives were securing the exterior of the residence awaiting the warrant, Ju Cho was observed proceeding toward his residence in the 100 block of Incarnate Word. When he observed the detectives outside his residence he speed [sic] around the corner and attempted to evade the detectives. The assisting detectives were successfully able to stopped [sic] Ju Cho's vehicle. As they approached his 1994 Isuzu Rodeo, a pungent odor commonly associated with burning marijuana was detected. During the interview of Ju Cho, he was found to be in possession of several grams of marijuana.
The information obtained from Gonzalez was important to establishing probable cause. However, Gonzalez was an informant whose reliability was then unknown to Detective Ansardi. Thus, it was essential *446 that the officer include independent facts in the affidavit to support Gonzalez' statements. Supportive of Gonzalez's credibility is Detective Ansardi's assertion that he saw the Nissan car (belonging to Gonzalez) in the Defendant's garage. The Defendant contends, however, that the officer could not have seen the car from a position outside of the house, as photographs purportedly taken on November 18, 1999 show that the blinds at the garage door window were closed. Defendant argues that the officer materially and knowingly misled the issuing judge. He further asserts that without the information about the car, there could be no finding of probable cause.
In United States v. Leon, 468 U.S. 897, 923, 104 S.Ct. 3405, 3421, 82 L.Ed.2d 677, 698 (1984), the United States Supreme Court listed four situations where suppression is the appropriate remedy for a search pursuant to an invalid warrant: (1) the affiant misled the magistrate by including in the affidavit misleading statements which the affiant knew were false or would have known were false, except for reckless disregard for the truth; (2) the magistrate abandoned his neutral and detached role; (3) the affidavit was so lacking of indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) the warrant was deficient and could not be presumed valid. None of those factors are applicable in this case.
First, it is not clear that Detective Ansardi's statement that he saw the car through the window was untrue. The Detective testified at the motion hearing that when he first arrived at the house, he was able to look through the garage window because the blinds were raised four to five inches above the windowsill. When asked to explain why the blinds were closed in the photographs, he explained that the photographs were taken during the execution of the warrant, hours after he saw the car through the window. There were several police officers on the premises during the search, any of whom might have closed the blinds. Thus, there is no proof that the officer misrepresented facts in the affidavit.
Even if the officer's representations regarding his sighting of the car were removed from the application, the remaining information was sufficient to support probable cause. The affidavit shows that Lt. Simone observed Gonzalez engaging in behavior consistent with drug trafficking. Lt. Simone also saw Gonzalez and the Defendant together in the Defendant's car. This corroborates Gonzalez' assertion that he had been associating with the Defendant. The officers knew that the Defendant had a history of drug offenses. When they detained him, they found marijuana on him. All of these facts provide a "substantial basis" for the magistrate to conclude that probable cause existed to issue the search warrant.

HEARSAY TESTIMONY OF UNAVAILABLE WITNESS
The Defendant next asserts that the trial judge erred in permitting hearsay testimony of an unavailable witness, violating his right under state and federal constitutions to confront the witnesses against him. The Defendant argues that Lt. Simone's testimony regarding inculpatory statements made to him by Gonzalez constituted inadmissible hearsay and that he was deprived of his right of confrontation when the Sate did not produce Gonzalez for cross examination at trial.
The Defendant refers to the following exchange between the prosecutor and Lt. Simone regarding information that the officer elicited from Gonzalez at the airport:
Q. Did you have any conversations with either Mr. Gonzalez or Mr. Hernandez inside the airport?

*447 A. Once we were in our office, Mr. Gonzalez agreed to cooperate. He indicated that he had arrived in New Orleans two days earlier and had delivered 15 pounds of marijuana to Mr. Cho's residence.
Q. Did he state that he delivered it to Mr. Cho at his residence, or just delivered it to the residence?
A. He delivered it to Mr. Cho at his residence.
Q. So he stated he delivered it to Mr. Cho, and then he delivered it to Mr. Cho at his residence?
A. Right. He indicated that he delivered the marijuana to Mr. Cho at his residence.
Q. Did he indicate that he delivered this 15 pounds of marijuana to anyone else?
A. No.
(R., pp. 366-367).
Hearsay is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. La.C.E. art. 801C. Hearsay evidence is not admissible at trial except as otherwise provided by the Louisiana Code of Evidence or other legislation. La.C.E. art. 802. Hearsay is excluded because the value of the statement rests upon the credibility of an out-of-court asserter, who is not subject to cross-examination and other safeguards of reliability. State v. Maise, 00-1158, p. 16 (La.1/15/02), 805 So.2d 1141, 1152.
Under certain circumstances, the testimony of a police officer may include information provided by another individual without constituting hearsay, if offered to explain the course of a police investigation and the steps leading to the defendant's arrest. State v. Hawkins, 96-0766, pp. 4-5 (La.1/14/97), 688 So.2d 473, 477; State v. Cowart, 01-1178, pp. 19-20 (La.App. 5th Cir.3/26/02), 815 So.2d 275, 288. However, the Louisiana Supreme Court has said:
However, the fact that an officer acted on information obtained during the investigation may not be used as an indirect method of bringing before the jury the substance of the out-of-court assertions of the defendant's guilt that would otherwise be barred by the hearsay rule.
State v. Broadway, 96-2659, p. (La.10/19/99), 753 So.2d 801, 809, cert. denied, 529 U.S. 1056, 120 S.Ct. 1562, 146 L.Ed.2d 466 (2000).
The Defendant is not entitled to relief because he did not make a timely objection to the testimony at issue.[3] Hearsay evidence, not objected to, constitutes substantive evidence, which may be used by the trier-of-fact to the extent that it has probative or persuasive value.[4]State v. Pendelton, 96-367, p. 14 (La.App. 5th Cir.5/28/97), 696 So.2d 144, 152, writ denied, 97-1714 (La.12/19/97), 706 So.2d 450. Moreover, the Defendant elicited the same *448 information during his cross-examination of Lt. Simone. See, State v. Sullivan, 97-1037, pp. 15-16 (La.App. 4th Cir.2/29/99), 729 So.2d 1101, 1109, writ denied, 99-0797 (La.9/17/99), 747 So.2d 1039; State v. Humphrey, 96-838, p. 8 (La.App. 5th Cir.4/29/97), 694 So.2d 1082, 1086, writ denied, 97-1461 (La.11/7/97), 703 So.2d 35. Based on the foregoing, we find no merit to this assignment of error.

DENIAL OF MISTRIAL
Next, the Defendant asserts that the trial judge erred in denying a mistrial after Lt. Simone and Detective Ansardi referred to other crimes. Defendant argues that he was prejudiced by references to his prior criminal activity made by Lt. Simone and Detective Ansardi in the following exchanges between defense counsel and Lt. Simone on cross-examination:
Q. [To Lt. Simone]
Did you see anybody leave or enter that house before the search warrant was executed?
A. No, sir.
Q. Have you ever executed a search warrant before, Mr. SimoneI mean Lieutenant Simone?
A. Yes, sir.
Q. Is it common police procedure to detain a suspect like that while gaining the search warrant?
A. It wouldn't be unusual, especially if you had problems with the suspect prior.
(R., pp. 368-369).
Defendant further complains of comments made by Detective Ansardi in response to cross-examination:
Q. Didn't youdidn't you say that? Didn't you tell the jury the marijuana wasn't found in the Nissan?
A. It was found in the closet.
Q. Yes, sir. So what does that have to do with not arresting Mario Gonzalez?
A. It's called constructive possession.
Q. Tell us about it. Tell the jury about his constructive possession.
A. This is Ju Cho's residence. We proved residency. And Ju Cho was not unfamiliar to me.
(R., p. 523).
In this case, La.C.Cr.P. art. 771 governs the Defendant's request for a mistrial, as it was neither made by the judge, district attorney, or court official, nor was it elicited by the prosecutor. See: La.C.Cr.P. 770, State v. Ledet, 00-11, p. 23 (La.App. 5th Cir.7/30/01), 792 So.2d 160, 175 and State v. Sprinkle, 01-137, p. 20 (La.App. 5th Cir.10/17/01), 801 So.2d 1131, 1144. C.Cr.P. art. 771 provides:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
* * * *
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
A mistrial is not required under either Article 770 or Article 771, absent a showing of a pattern of unresponsive answers or improper intent by the police officers. State v. Pickrom, 31,987, *449 p. 13 (La.App. 2nd Cir.5/5/99), 732 So.2d 800, 809. Here, the officers' responses do not show improper intent. The cross-examination as a whole was repetitive and contentious and the officers cautiously refrained from making more than vague references to prior offenses.[5] The proper remedy under Article 771 for an inappropriate remark by a law enforcement official is an admonishment directing the jury to disregard that remark. Id. It is evident that Article 771 mandates a request for an admonishment. State v. Tribbet, 415 So.2d 182, 185 (La.1982). The Defendant did not request the trial judge to admonish the jury after the responses at issue. Thus, we find no error in this regard.

DENIAL OF IMPEACHMENT OPPORTUNITY
The Defendant first complains that the trial judge erred in denying him the opportunity to impeach the credibility of hearsay declarant Gonzalez by cross-examining Lt. Simone regarding Gonzalez's criminal record. The Defendant argues that the trial court's ruling deprived him of a fair trial.
As discussed above, Lt. Simone testified that Gonzalez admitted to selling 15 pounds of marijuana to the Defendant and to delivering the drugs to the Defendant's house. During cross-examination, defense counsel, questioned Lt. Simone as follows:
Q. Did you get [Gonzalez'] rap sheet?
A. No, I didn't. I turned the investigation over to Detective Ansardi.
Q. Did you find out if he was wanted for anything or on probation or parole?
A. We ran a criminal history check on him, correct.
Q. And what kind of criminal history did he have?
A. The only thing I can recall offhand was that he had been arrested in Dallas, Texas, a month earlier.
Q. Just 30 days earlier? For what?
Mr. Burget [prosecutor]: Objection, Your Honor. This is inadmissible.
The Court: Sustained.
Mr. Regan: The basis for the inadmissibility?
Mr. Burget: Prior bad acts.
Mr. Regan: He's not on trial; they let him go.
Mr. Burget: Your Honor, it doesn't matter if he's on trial
The Court: Sustained.
(R., p. 380).
Defense counsel inquired as to whether Hernandez or Gonzalez was on probation at the time the officer stopped them at the airport. The following exchange ensued:
Mr. Burget: Still, the prior criminal history is irrelevant. It's inadmissible.
Mr. Regan: It goes to the credibility.
The Court: Objection overruled.
By Mr. Regan:
Q. Either one of them on probation or parole?
A. It's my understanding that Mario Gonzalez was on probation, I believe.
Q. And do you know out of what state or what parish?
Mr. Burget: I'm going to object that this is purely speculative, Your Honor
...
The Court:
If you know, you can answer.

*450 By Mr. Regan:
Q. If you know for certain.
A. Once again, I didn't follow up
Mr. Burget:
Your Honor, I don't mean to be rude, Lieutenant Simone, but any arrests only convictions are admissible in a criminal procedure, no arrests. Note my objection.
Mr. Regan: Unless relevant for other reasons.
By Mr. Regan:
Q. Now, this individual, at this point were you able to track him down, can you find him?
Mr. Burget: Objection to the relevance, Your Honor. He's not
The Court: Objection sustained.
Mr. Regan: As a law enforcement officer in this case, if you wanted Mario Gonzalez, could you find him?
Mr. Burget: Objection, Your Honor.
The Court: Objection sustained.
Mr. Regan: Note my objection.
(R., pp. 385-386).
Defendant bases his argument on La. C.E. art. 806, which provides:
When a hearsay statement, or a statement defined in Article 801(D)(2)(c) or (D)(3), has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness. Evidence of a statement or conduct by the declarant at any time, offered to attack the declarant's credibility, is not subject to any requirement that he may have been afforded an opportunity to deny or explain. If the party against whom a hearsay statement has been admitted calls the declarant as a witness, the party is entitled to examine him on the statement as a witness identified with an adverse party.
There are few Louisiana cases interpreting Article 806. In State v. Kelly, 96-903 (La.App. 5th Cir.11/12/97), 704 So.2d 800, writ denied, 97-3104 (La.4/9/98), 717 So.2d 1142, this Court noted that the article tracks Rule 806 of the Federal Rules of Evidence. There are several federal court cases interpreting the article and its intended function. The Kelly court quoted United States v. Graham, 858 F.2d 986, 990 (5th Cir.1988), cert. denied, Graham v. United States, 489 U.S. 1020, 109 S.Ct. 1140, 103 L.Ed.2d 201 (1989), in which the United States Fifth Circuit stated:
The purpose of rule 806 is to establish a standard for attacking the credibility of a hearsay declarant: "the credibility of the declarant may be attacked ... by any evidence which would be admissible for those purposes if the declarant had testified as a witness." Fed.R.Evid.806 (emphases added). The Advisory Committee Notes accompanying the rule explain the underlying rationale for the rule by noting that "[t]he declarant of a hearsay statement which is admitted in evidence is in effect a witness. His credibility should in fairness be subject to impeachment and support as though he had in fact testified." Fed.R.Evid. 806 advisory committee note.
See also, United States v. Grant, 256 F.3d 1146, 1154 (11th Cir.2001).
Had Gonzalez testified at trial, the Defendant would have been entitled to test his credibility, but only within the limits of La.C.E. art. 609.1, which provides, in pertinent part:
A. In a criminal case, every witness by testifying subjects himself to examination relative to his criminal convictions, subject to limitations set forth below.
B. Generally, only offenses for which the witness has been convicted are admissible *451 upon the issue of credibility, and no inquiry is permitted into matters for which there has only been an arrest, the issuance of an arrest warrant, an indictment, a prosecution, or an acquittal.
C. Ordinarily, only the fact of a conviction, the name of the offense, the date thereof, and the sentence imposed is admissible....
The Defendant was only entitled to question Lt. Simone regarding Gonzalez's prior convictions. Although Lt. Simone recalled learning that Gonzalez had one prior arrest, he was not able to state with certainty that Gonzalez had a conviction. When the officer was asked whether Gonzalez was on probation at the time that he interviewed him, Lt. Simone responded that he believed so, but he did not recall any further details, and any further comment would have constituted speculation. The Defendant did not attempt to proffer evidence that Gonzalez had been convicted of a crime, nor did he argue that he knew of some crime of which Gonzalez had been convicted. Furthermore, the Defendant does not show how he was prejudiced by the trial judge's rulings. Accordingly, we find no error in the trial judge's rulings relative to the questioning of Lt. Simone about Gonzalez's criminal record.
The Defendant further complains that the trial judge erred in barring him from questioning Sgt. Harrison about customary police practice in using confidential informants in narcotics investigations. The trial judge ruled that it was not appropriate to question Sgt. Harrison on that issue because he was called as an expert in a specific area and was not familiar with the facts of the Defendant's case.
La.C.E. art. 611B provides, in pertinent part, "A witness may be cross-examined on any matter relevant to any issue in the case, including credibility." The scope of cross-examination need not be limited to matters covered in direct examination. State v. Thibodeaux, 98-1673, p. 15 (La.9/8/99), 750 So.2d 916, 928, cert. denied, 529 U.S. 1112, 120 S.Ct. 1969, 146 L.Ed.2d 800 (2000).
Sgt. Harrison was qualified as an expert in the use, packaging, distribution, trafficking, and value of narcotics. His testimony on direct examination related almost exclusively to the distinctions between the users and the dealers of narcotics. However, his broad experience in illegal narcotics would arguably have qualified him to comment on the use of police informants. Since the subject was relevant to the instant case, because an informant played a large role in the investigation, the trial judge erred in preventing the Defendant from pursuing that line of questioning. However, the Defendant fails to show how Sgt. Harrison's testimony on the subject of police informants would have changed the outcome of the case. Moreover, the Defendant could have addressed his questions about informants to Detective Ansardi who had direct contact with Gonzalez. Based on the foregoing, we find that any error in this regard was harmless.

FAILURE TO INSTRUCT ON JUDICIAL CONFESSION OR TO DECLARE MISTRIAL
The Defendant claims that he was prejudiced by the prosecutor's discussion about Joseph's confession in closing rebuttal argument. The Defendant contends that the argument was misleading and that the trial judge should have rectified the error by instructing the jury on judicial confessions or by declaring a mistrial.
La.C.Cr.P. art. 774 provides:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the *452 state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
The state's rebuttal shall be confined to answering the argument of the defendant.
In the instant case, the State waived its closing argument. After the defense counsel gave his closing argument, the prosecutor made a rebuttal argument. In referring to the testimony of defense witness Joseph, the prosecutor stated,
Let me explain something to you. It's the oldest trick in the book, the oldest defense trick. You parade a witness in here.... He testifies, "No, no, Ladies and Gentlemen, it was my dope. I was buying it, selling it, I possessed it with intent to distribute it. It's all mine. I did it." No physical evidence to point the finger to him, because if there was, I would have charged the man with it. There's absolutely no evidence to link him to that home.
He comes in and tells you, "I did it. I did it. It's mine." You take the bait. You find him not guilty. Well, this trial's over. Just because Aaron Joseph takes the stand and says, "I'm guilty. I'm guilty," doesn't make him guilty. I've got to charge the man with a crime.
(R., pp. 814-815).
Defense counsel objected stating, out of the jury's hearing, "There's one time in law where you don't need to corroborate a crime, and that is when there's a judicial confession." (R., p. 815). The trial judge heard argument on the issue from both attorneys, but did not rule on the objection. The prosecutor continued his argument:
Before I was interrupted, the DA's office has to initially charge Mr. Joseph with a crime. And then Mr. Joseph has a right to a trial. And I have to prove beyond a reasonable doubt that he possessed marijuana with the intent to distribute. I have no physical evidence of that, only his testimony in this.
Well, guess who's going to show up at Mr. Joseph's trial? John Cho.
Defense counsel again objected, and requested an instruction on judicial admissions. The trial judge responded, "Overruled right now." (R., pp. 816-817).
The prosecutor continued:
John Cho can testify that, "Ladies and Gentlemen," to a different jury, "It's my dope. All the physical evidence points to whom? To him."
And guess what that jury's going to do. "Well, it couldn't have been Aaron Joseph's dope, it had to be John Cho's dope, so we're going to find Aaron Joseph not guilty."
Well, then what happens? Mr. Cho is set free; Mr. Joseph is set free. They don't have to testify; it's the Fifth Amendment privilege. And double jeopardy sets in. Nobody can try him again. It's the oldest trick in the book, and you've just been had.
(R., p. 817).
The Defendant again requested an instruction on judicial admission and the trial judge denied the request. Defense counsel objected for the record. At the conclusion of trial, the Defendant again orally requested and was denied an instruction on judicial confession.
The Defendant asserts that, because the jury was not apprised of the law of judicial confession, it was falsely led to believe that an acquittal here would allow him to later testify on Joseph's behalf without fear that his testimony would be used against him.
La.C.Cr.P. art. 807 provides that the parties have a right to submit special written charges for the jury, and that it *453 shall be given if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.[6]
The Defendant's request for a jury charge on judicial admission is misplaced. Judicial confession is a concept applicable to the civil law, and not to criminal proceedings.[7] Furthermore, even if it were applicable, the admission was not made by a party, but by a witness.
The Defendant also contends that the trial judge erred in failing to grant a mistrial based on the prosecutor's argument. We find no reversible error in this regard. First, the Defendant did not move for a mistrial below. Second, we find that the requested charge was not "pertinent," as required by Article 807, as it does not apply in these circumstances. Thus, we find that the trial judge did not err in refusing to instruct the jury on judicial confession.

EXCESSIVE SENTENCE
The Defendant next argues that his mandatory life sentence as a third felony offender is constitutionally excessive. We note that Defendant did not file a motion to reconsider sentence, as prescribed by La.C.Cr.P. art. 881.1. This omission normally precludes review of a sentence on appeal. See, State v. Ewens, 98-1096, p. 10 (La.App. 5th Cir.3/30/99), 735 So.2d 89, 96, writ denied, 99-1218 (La.10/8/99), 750 So.2d 179. However, this Court has routinely reviewed sentences for constitutional excessiveness absent a defendant's compliance with Article 881.1. State v. Anderson, 01-789, p. 8 (La.App. 5th Cir.1/15/02), 807 So.2d 956, 961.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Lobato, 603 So.2d 739, 751 (La.1992); State v. Munoz, 575 So.2d 848, 851 (La.App. 5th Cir.1991), writ denied, 577 So.2d 1009 (La.1991). It is presumed that a mandatory minimum sentence under the Habitual Offender Law is constitutional. State v. Williams, 01-1007, p. 11 (La.App. 5th Cir.2/26/02), 811 So.2d 1026, 1032. However, if a trial judge finds that an enhanced punishment mandated by La.R.S. 15:529.1 makes no "measurable contribution to acceptable goals of punishment" or that the sentence amounts to nothing more than "the purposeful imposition of pain and suffering" and is "grossly out of proportion to the severity of the crime," he has the option and duty to reduce such sentence to one that would not be constitutionally excessive. State v. Dorthey, 623 So.2d 1276, 1280 (La.1993).
*454 A trial judge may only depart from the mandatory sentence if he finds clear and convincing evidence that would rebut the presumption of constitutionality. State v. Williams, 01-1007 at p. 11, 811 So.2d at 1032; State v. Johnson, 97-1906, p. 8 (La.App. 5th Cir.3/4/98), 709 So.2d 672, 676. The burden is on the defendant to rebut the presumption of constitutionality by showing:
[he] is exceptional, which in this context means that because of unusual circumstances this Defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
Id., quoting State v. Young, 94-1636, pp. 5-6 (La.App. 4th Cir.10/26/95), 663 So.2d 525, 528, writ denied, 95-3010 (La.3/22/96), 669 So.2d 1223. The Louisiana Supreme Court has cautioned that downward departures from the mandatory minimum sentences should be made only in rare cases. State v. Lindsey, 99-3256, p. 5 (La.10/17/00), 770 So.2d 339, 343.
In the instant case, the predicate convictions alleged in the habitual offender bill were for possession of marijuana with intent to distribute in 1999 and attempted possession of cocaine in 1995. At the time of the Defendant's underlying offense, La.R.S. 15:529.1A(1)(b)(ii) made a life sentence mandatory.[8] At the time of sentencing, the Defendant moved the trial judge to consider a downward deviation under Dorthey. The judge responded:
I think I have been in the past giving some consideration in cases to "Dorthey." However, in this case, I believe Mr. Cho has shown that he is the type of person that this statute was designed for because of it being a real distributor. I havecases where I've had some sympathy on people has been when they are just addicts. They're nothing but an addict, that's all they are and they're selling it so, selling three to get one for themselves. And I don't believe that we should fill our penitentiaries with addicts.
This case I find different.
(R., p. 905).
The Defendant does not argue any special circumstances that might serve to rebut the presumption of constitutionality. Based on the record, we find the sentence is not excessive.

ERRORS PATENT DISCUSSION
The record was reviewed for errors patent. La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337, 338 (La.1975); State v. Perrilloux, 99-1314, p. 12 (La.App. 5th Cir.5/17/00), 762 So.2d 198, 206. The review reveals one patent error.
The transcripts of the original sentencing and the habitual offender sentencing do not show that the trial judge advised the Defendant of the two-year prescriptive period for applying for post-conviction relief. La.C.Cr.P. art. 930.8. However, the habitual offender commitment states, "The Court advised the Defendant he/she has 3 days from this date to Appeal this Conviction and 2 years from the date the Conviction and Sentence becomes final to file Post Conviction Relief." (R., p. 106).
*455 Generally, where the transcript conflicts with the minute entry, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). When the trial judge fails to inform a defendant of the prescriptive period for filing Post Conviction Relief, we remand the matter for the district court to inform the defendant of the provisions of La.C.Cr.P. art. 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of the Court's opinion and to file written proof that the defendant received the notice in the record and to file written proof in the record. See: State v. Neuman, 01-1066, p. 11 (La.App. 5th Cir.4/10/02), 817 So.2d 180, 186.
Accordingly, the Defendant's conviction and sentence are hereby affirmed. The case is remanded for the trial judge to send written notice advising the Defendant of the provisions of La.C.Cr.P. art. 930.8 within ten days of the rendering of this opinion, and to file written proof that the Defendant received the notice in the record.
CONVICTION AND SENTENCE AFFIRMED; REMANDED.
NOTES
[1] The name is spelled both "Gonzalez" and "Gonzales" in the record.
[2] The Defendant was the only person arrested in connection with the search of the residence.
[3] Counsel did make a hearsay objection earlier in the State's direct examination of Lt. Simone, when he testified that he questioned Gonzalez about whether he knew Hernandez. Counsel did not, however, object when Lt. Simone testified to what Gonzalez told him about his association with Defendant.
[4] The courts have held that unobjected to hearsay which is the exclusive evidence of the offense and is contradicted at trial by the sworn recantation of the out-of-court declarant is no evidence at all. State v. Allien, 366 So.2d 1308, (La.1978); State v. Stroughter, 97-1161, p. 6 (La.App. 4th Cir.2/10/99), 727 So.2d 1283, 1287, writ denied, 99-0704 (La.7/22/99), 747 So.2d 14. See also, State v. Noil, 01-521, p. 17 (La.App. 5th Cir.12/26/01), 807 So.2d 295, 308. In the instant case, however, the statements of Gonzalez to Lt. Simone were not the only evidence of Defendant's guilt, and the declarant did not recant his statement.
[5] This Court has found that Article 770 is not applicable unless the reference clearly constitutes a comment on other crimes committed or alleged to have been committed by the Defendant. State v. Sprinkle, 01-137 at p. 20, 801 So.2d at 1144. The holding can be applied, by analogy, to Article 771.
[6] The Defendant did not submit a written request for the special jury instruction, as prescribed by the article. However, when the trial judge has entertained numerous oral requests and objections by the Defendant, the trial judge has effectively dispensed with the requirement that special jury charges be in writing, and has tacitly agreed to consider such instructions as orally proposed. See, State v. Haddad, 99-1272, p. 5 (La.2/29/00), 767 So.2d 682, 685, cert. denied, 531 U.S. 1070, 121 S.Ct. 757, 148 L.Ed.2d 660 (2001). Here, the trial judge entertained and denied two oral requests by the Defendant. In doing so, the trial judge tacitly waived the writing requirement in Article 807.
[7] La.C.C. art. 1853 provides:

A judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it.
A judicial confession is indivisible and it may be revoked only on the ground of error of fact.
[8] La.R.S. 15:529.1A(1)(b)(ii) formerly read:

If the third felony or either of the two prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.